# EDUCATIONAL TESTING SERVICES

v.

## KATZMAN.

No. 85–3768.

United States District Court,
D. New Jersey.

Jan. 16, 1987.

John Rounsaville, Jr., and Wilmer, Cutler & Pickering, Washington, D.C. (Thomas P. Olson, and Carol T. Lee, Washington, D.C., John L. McGoldrick, John T. Brenner, and McCartner & English, Newark, N.J., Stanford von Mayrhauser, and Russell W. Martin, Princeton, N.J., and Jon A. Baumgarten, and Proskauer, Rose, Goetz & Mendelsohn, both of Washington, D.C., of counsel) for plaintiff.

Roger L. Zissu, and Cowen, Liebowitz & Latman, New York City (Madonna M. Malin, and Gordon Hurwitz Butowsky Weitzen Shalov & Wien, New York City, and Edward Dauber, and Greenberg, Dauber & Epstein, Newark, N.J., on the brief) for defendants.

BARRY, District Judge.

Educational Testing Services brings this action against The Princeton Review and its sole officer and shareholder, John Katzman, alleging copyright infringement and pendent state law claims. Plaintiff now moves to strike defendants' jury demand. The facts are those set out in this court's earlier opinion reported at 631 F.Supp. 550 (D.N.J.1986). Plaintiff's motion will be denied.

The issue presented by defendants' jury demand is more easily stated than it is resolved. Does plaintiff by seeking statutory damages under § 504 of the Copyright Act[1] confer upon the defendants the right to a trial by jury.[2] Because plaintiff's

---

1. 17 U.S.C. § 504(c)(1) and (2) (1982). Section (c)(1) provides for damages "instead of actual damages and profits ... in a sum of not less than $250 or more than $10,000 as the court considers just." If a finding of willful infringement is made, the court may increase these "statutory damages" to an amount not more than $50,000. 17 U.S.C. § 504(c)(2).

2. Plaintiff also seeks a permanent injunction and attorney's fees and costs. Defendants do not contend, nor could they, that either of these forms of relief give rise to trial by jury. *Rodg-*

right to damages, assuming a showing of infringement, is statutory, the inquiry is two-fold. First, in creating the right to damages did Congress also intend that the issue be submitted to a jury; and second, even if Congress had no such intention does application of the seventh amendment achieve the same result.

■ If possible a statute should be construed to avoid a constitutional issue.[3] However, because I find the words of the statute ambiguous and the legislative history inconclusive, I will reach the merits of defendants' seventh amendment argument. I note, parenthetically, that the precise issue now before me has been the subject of conflict between both courts[4] and commentators.[5]

*The Statute*

The starting point is the language of the statute. Section 504(c)(1) of the 1976 Act states in pertinent part:

[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages ... in a sum of not less than $250 or more than $10,000 as the court considers just.

17 U.S.C. § 504(c)(1) (1982). Section 504(c)(2) further provides that if

the court finds ... that the infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $50,000.

Plaintiff contends[6] that the plain language of the statute shows that Congress intended these "in lieu of" or "liquidated" damages to be awarded by the judge and not a jury. In plaintiff's view, the statute's reference to "the court" can only mean the judge. Moreover, according to plaintiff, the phrases "as the court considers just" and "the court in its discretion" cannot be squared with the traditional functions of juries which cannot be said to exercise discretion or determine what is "just," in the same way a judge does. Support for plaintiff's position is garnered from the actual damages provision[7] which does not refer to "the court" or "discretion" and from

---

*ers v. Breckinridge Hotels Corp.,* 512 F.Supp. 1326, 1327 [214 USPQ 337, 338] (E.D.Mo.1981).

**3.** *See Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985).

**4.** The issue now before the court has engendered a split between those Circuit Courts of Appeal that have addressed it either under the 1976 or the 1909 Act. The First, Second, Fifth and Ninth Circuits have all held that there is no jury right in statutory damages cases although only one of those circuits reached the seventh amendment issue. *See Chappell & Co. v. Palermo Cafe Co.,* 249 F.2d 77 (1st Cir.1957) (1909 Act); *Oboler v. Goldin,* 714 F.2d 211 (2d Cir. 1983) (per curiam) (1976 Act); *Twentieth Century Music Corp. v. Frith,* 645 F.2d 6 (5th Cir.1981) (per curiam) (1976 Act); *Sid & Marty Krofft Television Prod. v. McDonald's Corp.,* 562 F.2d 1157 (9th Cir.1977) (1909 Act).

One Circuit, however, the Fourth, while rejecting the contention that Congress intended to confer the right to a jury, has held that the seventh amendment guarantees that right in cases in which statutory damages are sought. *Gnossos Music v. Mitken, Inc.,* 653 F.2d 117 (4th Cir.1981).

Although the Court of Appeals for the Third Circuit has not addressed the issue, it has been the subject of conflicting decisions at the district court level. *Compare Glazier v. First Media*

*Corp.,* 532 F.Supp. 63 (D.Del.1982) (statutory damages for judge), *and Rodgers v. Eighty Four Lumber Co.,* 623 F.Supp. 889 (W.D.Pa.1985) (same), *with BMI v. Moor-Law Inc.,* 212 U.S.P.Q. 487 (D.Del.1978) (refusing to strike defendant's jury demand).

In addition, the *Chappell* decision is of limited utility coming, as it did, before *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) and its progeny. After *Beacon Theatres,* a jury demand may not be struck merely because the legal claim is "incidental" to the equitable claims. *See Chappell & Co., Inc. v. Pumpernickel Pub, Inc.,* 79 F.R.D. 528, 529 (D.Conn.1977) (statutory damages triable to a jury).

**5.** *Compare* the Note, *The Availability of Jury Trials in Copyright Infringement Cases: Limiting the Scope of the Seventh Amendment,* 83 Mich. L.Rev.1950 (1985) *with* Patry, *The Right to a Jury in Copyright Cases,* 29 J. Copyright Soc'y 139 (1981).

**6.** Contrary to the assertion of defendants in their surreply that plaintiff has abandoned this argument, plaintiff's response to the surreply makes clear its intent to eschew re-argument of already argued positions.

**7.** 17 U.S.C. § 504(b) (1982).

§ 505 [8] which does contain those words to command a function which is clearly one for the judge.

The simple answer to plaintiff's first argument, as defendants correctly point out, is *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). In that case, the Supreme Court held, in construing a provision similar to the one at bar, that the term "court" did not necessarily mean only a judge but could also include the jury. 415 U.S. at 195, 94 S.Ct. at 1008. At least one court, the Court of Appeals for the Fourth Circuit, has adopted that definition of "court" for purposes of § 504. *Gnossos Music v. Mitken Inc.,* 653 F.2d 117 (4th Cir.1981); *but see Glazier v. First Media Corp.,* 532 F.Supp. 63, 65 (D.Del.1982).

The addition of the word "discretion" and the phrase "as the court considers just" does not, as plaintiff asserts, alter the definition of "court." While plaintiff is correct in noting that discretion is often thought of as a term of equity, *see* Note, *The Availability of Jury Trials in Copyright Infringement Cases: Limiting the Scope of the Seventh Amendment,* 83 Mich.L.Rev. 1950, 1954 n. 32 (1985) (hereinafter Michigan Note), the dispensing of justice and the exercise of discretion is not the exclusive province of the "chancellor." To suggest, as plaintiff's argument does when taken to its logical end, that juries do not and cannot consider what is just or exercise discretion in the setting of damage awards is to divide the jury and judge into separate spheres where no such division exists.[9] Moreover, it may be that including the words "court" and "discretion" in the statutory damages provisions is nothing more than a subtle admonishment that, absent the relative ease in computing damages occasioned by hard facts, discretion should be exercised to avoid the twin evils of under- or over-compensation.

On its face there is some merit to plaintiff's argument that the use of identical language in § 505, which clearly calls for the judge to consider the award of attorney's fees and costs, demonstrates congressional intent to take statutory damage awards away from the jury.

Defendants persuasively argue, however, that the addition of the phrase "the court in its discretion" was added to effect a significant change in the 1909 Act unrelated to the jury issue. Under the earlier Act, costs to the prevailing party were mandatory. The 1978 Act substituted the familiar "in its discretion" language for the term "shall." It is a quantum leap to suggest that this change proves that simply because Congress intended to place with the judge the discretion to award or withhold costs—a task regularly assumed by judges—that it also intended to remove from juries the power to award damages. In sum, plaintiff has failed to convince me that the plain language of the statute precludes the submission of the issue of statutory damages to a jury.

*The Legislative History*

Where the words of a statute are ambiguous, as they are here, resort may be made to the legislative history in an attempt to ascertain the intent of the legislature, a task which both plaintiff and defendants exhort this court to assume.

My analysis of the lengthy briefs of the parties and my own review of the legislative history leads me to the inescapable conclusion that I cannot conclude as either party would have me do. Before I set out in more detail those portions of the legislative history that are of help and also those that merely serve to muddle the picture, I pause to note the following. While the parties should be commended for their scholarship to the extent it goes beyond the Michigan Note and Patry, *The Right to a Jury in Copyright Cases,* 29 J. Copyright Soc'y 139 (1981) (hereinafter Patry), the parties have also served to highlight the difficulties and prat-falls a court necessarily encounters when it embarks on a sojourn into the "legislative history." As one

**8.** 17 U.S.C. § 505 allows the court to award full costs "in the court's discretion." In addition, the court "may" award attorney's fees as part of the costs. *Id.*

**9.** While it is safe to say that only judges decide law, the application of law to fact is a function for either.

leading commentator has noted the history on any given legislative action is often comprised of a selective list of statements helpful to the party advancing them to the notable exclusion of damaging ones. Reynolds, Judicial Process 225 (1980). And here I hear charges of quotes taken out of context and statements "buried" in the history yet prominent in a leading treatise.[10]

Nor is the term "legislative" particularly descriptive as here, again, the parties' clash over the extent that statements of witnesses to hearings can be considered part of the process and whether or not a particular legislator served as a "draftsman." While rules of interpretation provide guidance in assigning relative weights to a given piece of evidence the "history" is almost never clear. In short, to the extent "legislative history" is history, it is largely reconstructed; to the extent it is legislative, it often is nothing more than evidence of the complex process that begets an act of Congress. It is no wonder that the Supreme Court has said, when faced with a similar tumble of conflicting statements, that "[b]ecause of this ambiguity, it is clear that we must look primarily to the statutes themselves to find the legislative intent." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 412 n. 29, 91 S.Ct. 814, 821 n. 29, 28 L.Ed.2d 136 (1971).

That having been said, I now turn to what may be fairly and clearly ascertained from literally centuries of American copyright law.

The positions of the parties may be briefly summarized. Defendants, after the Patry study, contend that the section of the 1909 Act which stands as the predecessor to § 504 of the 1978 Act was drafted with the intention of preserving prior statutory damage provisions which were available in actions at law. *See Brady v. Daly,* 175 U.S. 148, 20 S.Ct. 62, 44 L.Ed. 109 (1894). Since § 504, the reasoning continues, was

also intended to perpetuate existing law, the current Copyright Act was intended to maintain the right to jury when statutory damages were sought.

Plaintiff, on the other hand, insists that section 25 of the 1909 Act was in fact a radical departure from prior law that for the first time allowed the court to assess statutory damages without any regard to actual damages. This change was a fundamental one, creating a new equitable right, entrusted, as both judicial decisions and the subsequent legislative history of the 1976 Act referring to those decisions show, to the judge to the exclusion of the jury.

As indicated earlier, after reviewing all of the materials submitted by the parties, I am convinced that each is partly right and partly wrong. More precisely, I find persuasive defendants' argument that section 25 of the 1909 Act was passed with the intention that the statutory damages provision could be tried to a jury. The colloquy of Steuart, primary drafter of section 25, and one Wilcox is particularly illuminating:

> Mr. Wilcox. [I]f the plaintiff sought his remedy on the equity side ... and asked for an injunction and [also] for [statutory] damages[,] then it would be for the court to assess the damages unless it referred [statutory] damages to a jury, which is what in many jurisdictions the court would do.... But suppose the plaintiff ... sought his remedy on the law side ... then how could the court exercise its discretion?....
>
> Mr. Steuart. Of course, such questions as were submitted to the jury would have to be passed upon by the jury, and whatever verdict the jury found would leave the court in the position where the court could increase that if the court saw fit to do....[11]

Clearly, it was in the contemplation of Congress, as expressed by the section's chief draftsman, that statutory damages could

---

10. I do not find particularly persuasive defendants' citation to the House Judiciary Committee report accompanying the Semi-Conductor Chip Act of 1984. As plaintiff notes, the Chip Act is not an amendment to the Copyright Act. Further, such *post hoc* discussions, especially those relating to a different act, are properly suspect.

11. E. Brylawski & A. Goldman, Legislative Histor of the 1909 Copyright Act (1976), *annexed to* Defendants' Brief in Opposition at Exhibit D.

be found by a jury if that action were brought at law and even, it appears, if the action were brought in equity. This interpretation is bolstered by the Second Circuit's decision in *Mail & Express Co. v. Life Publishing Co.*, 192 F. 899 (2d Cir. 1912) which plainly held that statutory damages were triable to a jury in a legal action.[12]

However, I am also assured that at some point the original intent of the statute was lost. It appears that it became common for judges to award statutory damages without the aid of a jury. These cases occurred, of course, at first on the equity side but are found, as pointed out by plaintiff, after the merger of law and equity.[13] While references to the discretion of the trial judge appear to contradict the statutory scheme outlined by Steuart and Wilcox, not even Steuart, as the previously quoted section of the legislative history indicates, envisioned a jury in every case. What really changed was a view of statutory damages from liquidated damages to something untethered to actual damages. Steuart clearly thought that statutory damages were to be "liquidated damages, so that we can recover *on the evidence* what the court may decide to be proper." [14] The practice soon became somewhat different; judges no longer felt tied to legal proofs. The easiest explanation is the wording of the statute and perhaps the judicial fondness for discretion.

In short, while the drafters of the 1909 Act apparently envisioned juries considering the issue of statutory damages as a given, the statute itself could be, and was, read more broadly. Judges, exercising their discretion, were free to turn what had been drafted as a liquidated damage provision into carte blanche to "do equity." *See,*

*e.g., S.E. Hendricks Co. v. Thomas Pub. Co.*, 242 F. 37, 41 (2d Cir.1917) (plaintiff should not fail for lack of proof). This freedom was particularly attractive in cases in which the expanding use of copyright law into new areas of expression made computing or even estimating damages difficult if not impossible.

In any event, this expansion of the use of equity in cases, some of which could have been tried to a jury if the issue had been raised, provided the basis for later courts to hold that the statutory damages provision was equitable in nature and hence tried to the judge. However, as the foregoing should make clear, the argument was disingenuous. Indeed, the practice was the other way around: because the cases were tried to a judge without regard to legal proofs, the results were properly deemed "equitable." In short, while the statutory damage provision may not have been conceived as an equitable remedy, it certainly began to lean that way.

This turn of events, spanning decades, casts great doubts on Patry's, and hence defendants', conclusion that the stated intention of the drafters of the 1976 Act to continue existing law meant the continuation of the jury right. While Patry may be correct in pointing out the similarity of § 504 to section 25 (and for that matter section 4966 of the 1895 Act), and the original intention of the drafters of the 1909 Act, their direct lineage is not strong enough to ignore the intervening case law. Whether it was wrong or not, the case law just prior to the passage of the 1976 Act clearly held that the equitable nature of the statutory damages provision precluded a jury trial on that issue. As plaintiff correctly points out, Congress is presumed to be aware of judicial opinions bearing on a

---

**12.** At first blush, *Mail & Express* decided three years after the 1909 Act went into effect by what was then the leading commercial court in the country should be a major precedent even though the court said little more than that its conclusion on the jury issue was the "better view" of a "somewhat obscure" statute. But *Mail & Express* has been largely ignored even in its own circuit. In *Oboler v. Goldin,* 714 F.2d 211 [220 USPQ 166] (2d Cir.1983), the Second Circuit held to the contrary on the jury issue

without mentioning *Mail & Express* and without any reasoning but merely a citation to Nimmer.

**13.** *See L.A. Westerman Co. v. Dispatch Printing Co.,* 249 U.S. 100, 39 S.Ct. 194, 63 L.Ed. 499 (1919) (pre-merger); *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 [95 USPQ 396] (1952) (post-merger).

**14.** See *supra,* note 11.

statute about to be amended. In essence, the best that can be said is that Congress chose to leave § 504 basically intact despite a clear conflict in the case law. Such a state of affairs can only render the legislative history ambiguous.

*The Seventh Amendment Issue*

■ Even if Congress did not intend to grant the right to a jury trial, the seventh amendment may, in an appropriate case, provide for one. *Curtis*, 415 U.S. at 194, 94 S.Ct. at 1008. If a remedy may be fairly characterized as "legal", the seventh amendment will protect the right to a jury even for causes of action created by statute after 1790. *Id.*

The Supreme Court has adopted a three part test for determining whether an issue is legal or equitable.:

> The "legal" nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and third, the practical abilities and limitations of juries.

*Ross v. Bernhard*, 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1969). Applying that test to the issue of statutory damages, I conclude that they are properly considered "legal" in nature.

### A. *Pre-merger Custom*

As the Supreme Court suggested, the first prong of the test "requir[es] extensive and possibly abstruse historical inquiry" and is thus the hardest to apply for precisely the same reason that an inquiry into the legislative history can be so frustrating. *See id.* In fact, the inquiry here *is* similar. Much of the legislative history and judicial opinions offered by the parties to show the intent of Congress in passing the 1909 and 1976 statutory damage provisions can be brought to bear on the issue of pre-merger custom. As my previous discussion indicates, the word "custom" applied here would be somewhat misleading. While it is clear that at one time actions to enforce the statutory damage provisions were brought on the law side, both before and after 1909, defendants are correct in noting the "legions" of cases brought prior to 1938 as actions in equity. However, while I found that scenario less than sufficient to hold that Congress intended to confer a right to a jury by "substantially reenacting" prior law, my review here need not be so restrictive. While I note the many cases brought on the equity side to enforce the right to statutory damages, both *Mail & Express* and the cited portion of the 1909 legislative history plainly indicates that prior to the merger of law and equity in 1938, *see* Fed. R.Civ.P. 2, it was customary to bring actions for statutory damages on the law side, especially when a plaintiff sought more than the statutory minimum.

### B. *Nature of the Remedy*

Of the three *Ross* factors, the second—the nature of the remedy sought—is the most compelling argument for a right to a jury in this case. Here the specific relief sought—money—smacks of the law side of the court. In fact, money damages are the quintessential form of legal relief granted by a jury. Plaintiff finds solace in the argument that statutory damages are "wholly discretionary." Plaintiff, however, reads the statute too broadly.

■ First of all, unlike other types of discretionary relief, statutory damages under the Copyright Act are not cumulative. A plaintiff must elect between actual damages and statutory damages; he or she may not have both. Nor could the court award statutory damages by way of general relief unless plaintiff had specifically elected them.

■ Second, the procedure whereby statutory damages are chosen strongly suggests a close connection between actual and statutory damages. As noted, plaintiff may elect the "in lieu of" damages any time before final judgment. While plaintiff in the case at bar has not done so, if statutory damages were equitable the possibility clearly exists that a plaintiff could seek actual damages up until a point at which a jury trial was proceeding badly and then effectively yank the question of damages from the jury by electing statutory

damages.[15] While I will not go so far as to say that Congress could not have intended such an unusual circumstance, it does suggest that actual damages are closely linked to statutory damages in a way cumulative equitable remedies would not be.

Third, the discretionary nature of statutory damages is not as "wholly discretionary" as plaintiff suggests. Once a finding of infringement has occurred, the court *must* enter a judgment for at least the statutory minimum.[16] Thus, the Copyright Act is distinguishable from those Acts cited by plaintiff for the proposition that statutory damages provisions are often held to be equitable in nature.[17] Certainly the discretion to enter any reasonable amount or no amount at all found in these statutes is a different kind of discretion than the one exercised in setting copyright damages between a congressionally set minimum and maximum.

Moreover, this is not the kind of case, often cited by plaintiff where a court has found *minimum* damages, sought together with an injunction, to be equitable in nature. Those cases are simply inapposite here. Here plaintiff has sought not only an award within the full range of § 504(c)(1) but has sought, as well, damages for willful infringement. Even if I assume *arguendo* plaintiff's position that (c)(2) damages are not punitive (and hence legal) in nature, the high potential award makes the damages more compensatory than restitutionary.

Finally, in my view statutory damages have all the trappings of punitive damages and, indeed, the tests are virtually the same, i.e., the more willful the infringement—the more outrageous the conduct—the higher the award. Punitive damages are for a jury.

### C. The Ability of Juries

This case, with which the court is intimately familiar even at this juncture, is no more complex or beyond the ability of a jury than vast numbers of other cases tried to juries. Be that as it may, the Michigan Note and at least one court[18] have argued that the last prong is more properly a test for exclusion than it is for inclusion. In other words, complex cases may bar the application of the seventh amendment without simple cases—conversely—requiring it. Assuming the correctness of this position without adopting it, the third prong of the *Ross* test is inconclusive. Therefore, since I now hold that the first two prongs of the test dictate a conclusion that statutory damages under the Copyright Act are legal in nature and the third prong does not preclude such a result, I will deny plaintiff's motion to strike defendants' jury demand. *See Gnossos Music v. Mitken, Inc.,* 653 F.2d 117 (4th Cir.1981).

If I have erred, and I do not believe I have, then I have erred on the side of protecting an important constitutional right, fundamental to the fair administration of justice.

The court will enter an appropriate order.

---

**15.** It is, nevertheless, disturbing to think that Congress would place this much control over a fundamental right in the hands of an adversary.

**16.** *Russell v. Price,* 612 F.2d 1123, 1129 (9th Cir.) *cert. denied,* 446 U.S. 952, 100 S.Ct. 2919, 64 L.Ed.2d 809 (1979).

**17.** *See, e.g.,* the discussion of backpay remedies in Title VII cases by Chief Justice, then Justice, Rehnquist, in *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

It is important to note, however, Chief Justice Rehnquist's specific recognition that the court could deny backpay relief "notwithstanding a finding of unlawful discrimination." *Id.* at 443, 95 S.Ct. at 2385. In contrast, under the Copyright Act a finding of infringement *requires* an award of at least minimum damages.

**18.** *BMI v. Papa John's, Inc.,* 201 U.S.P.Q. 302 (N.D.Ind.1979).