106 F.3d 284
 1997 Copr.L.Dec. P 27,610, 41 U.S.P.Q.2d 1664,
25 Media L. Rep. 1398, 97 Cal. Daily Op. Serv. 864,
97 Daily Journal D.A.R. 1275
 COLUMBIA PICTURES TELEVISION, Plaintiff-Appellee,
v.
KRYPTON BROADCASTING OF BIRMINGHAM, INC.; WABM Birmingham;
Krypton Broadcasting, Inc.; Krypton International
Corporation; WTWV, Inc.; WTVX; Daniel
S. Dayton; Alfred F. Decur, Defendants,
and
C. Elvin Feltner, Jr., Defendant-Appellant.
 Nos. 94-55816, 94-55894.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 15, 1995.
Decided Feb. 6, 1997.
 
 Richard I. Chaifetz, Columbia, MD, and William H. Shibley, Long Beach, CA, for the defendant-appellant.
 Henry J. Tashman, Gregory J. Kopta, Davis Wright Tremaine, Los Angeles, CA, for the plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California, Edward Rafeedie, District Judge, Presiding. D.C. No. CV-91-06847-ER.
 Before: FARRIS, BRUNETTI, and KOZINSKI, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 
 1
 C. Elvin Feltner is the owner of Krypton International Corporation, which in turn owns three television stations in the southeast.[1] Columbia Pictures Television licensed several television shows to the three stations, including "Who's the Boss?," "Silver Spoons," "Hart to Hart," and "T.J. Hooker." After the stations became delinquent in paying royalties, Columbia attempted to terminate the licensing agreements. The stations continued to broadcast the programs, and Columbia filed suit. During the course of the litigation, Columbia dropped all causes of action except its copyright claims against Feltner. The district court found Feltner vicariously and contributorily liable for copyright infringement on the part of the Krypton defendants, granted summary judgment in favor of Columbia on liability, and, after a bench trial, awarded Columbia $8,800,000 in statutory damages and over $750,000 in attorneys fees and costs. In this appeal, Feltner and Krypton International[2] challenge several of the district court's rulings.
 
 I. SUBJECT MATTER JURISDICTION
 
 2
 Feltner argues that Columbia's complaint fails to properly plead a claim arising under federal copyright law. Therefore, argues Feltner, subject matter jurisdiction was lacking in the district court. However, because Columbia's complaint alleges ownership and infringement of multiple copyrights and seeks relief under several sections of the Copyright Act--17 U.S.C. §§ 502 (injunction), 503 (impoundment), 504 (damages and profits), and 505 (costs and attorneys fees)--Columbia properly pled a claim arising under federal copyright law. Rano v. Sipa Press, Inc., 987 F.2d 580, 584 (9th Cir.1993); Vestron, Inc. v. Home Box Office, Inc., 839 F.2d 1380, 1381-82 (9th Cir.1988); Effects Assocs., Inc. v. Cohen, 817 F.2d 72, 73-74 (9th Cir.1987). The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a).
 
 II. VENUE
 
 3
 Feltner argues that venue was improper in the Central District of California. So long as the underlying facts are not in dispute, we review the district court's venue determination de novo. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 841 (9th Cir.1986). The district court's factual findings must be accepted unless clearly erroneous. See Reebok Int'l, Ltd. v. McLaughlin, 49 F.3d 1387, 1390 (9th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 276, 133 L.Ed.2d 197 (1995). We find that venue was proper in the Central District.
 
 
 4
 Venue under 28 U.S.C. § 1400(a)[3] is proper in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state. Milwaukee Concrete Studios v. Fjeld Manufacturing Co., 8 F.3d 441, 445-47 (7th Cir.1993); Johannsen v. Brown, 788 F.Supp. 465, 469 (D.Or.1992).
 
 
 5
 Columbia contends that specific jurisdiction exists over Feltner. We use a three part test for analyzing whether the exercise of specific jurisdiction satisfies the requirements of due process:
 
 
 6
 (1) the defendant must purposefully avail himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
 
 
 7
 (2) the claim must arise out of or result from the defendant's forum-related activities; and
 
 
 8
 (3) the exercise of jurisdiction must be reasonable.
 
 
 9
 Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir.1990).
 
 
 10
 Columbia alleged, and the district court found, that Feltner willfully infringed copyrights owned by Columbia, which, as Feltner knew, had its principal place of business in the Central District. This fact alone is sufficient to satisfy the "purposeful availment" requirement. Calder v. Jones, 465 U.S. 783, 789-90, 104 S.Ct. 1482, 1486-87, 79 L.Ed.2d 804 (1984) (holding that an intentional tort knowingly directed at a forum resident satisfies the minimum contacts test).
 
 
 11
 Additionally, Columbia relies on Feltner's wide-ranging contract-related contacts with Columbia in the Central District. Feltner argues that these contacts cannot support venue because they all arise out of the license agreements which, according to Feltner, are unenforceable because they were never signed by Columbia. This argument fails both because Feltner did not raise this argument in the district court and because whether or not the agreements are enforceable as a matter of contract law, Feltner's contacts with the Central District remain the same. Feltner's contract-related contacts are sufficient to satisfy the "purposeful availment" requirement. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 479, 105 S.Ct. 2174, 2184, 2185-86, 85 L.Ed.2d 528 (1985) (holding in contract action that, when one analyzes the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," the purposeful availment requirement is satisfied if a defendant has created "continuing obligations between himself and residents of the forum").
 
 
 12
 Under the second prong, Columbia's claims clearly "arise out of or result from the defendant's forum-related activities." As correctly asserted by Columbia, Feltner was able to authorize infringing broadcasts of Columbia's programs only because Columbia shipped those programs from the Central District to the Krypton stations pursuant to the license agreements.
 
 
 13
 Finally, under the third prong, "there is a presumption of reasonableness upon a showing that the defendant purposefully directed his actions at forum residents which the defendant bears the burden of overcoming by presenting a compelling case that jurisdiction would be unreasonable." Haisten v. Grass Valley Medical Reimbursement, 784 F.2d 1392, 1397 (9th Cir.1986) (citing Burger King, 471 U.S. at 477, 105 S.Ct. at 2184-85) (emphasis in original). Feltner's contentions--that he had more of a burden litigating in California than Columbia would have had in Florida, that Florida had a stronger interest than California in adjudicating the suit because he lived in Florida, and that Florida was the most efficient forum--are insufficient to meet his burden.
 
 
 14
 Because Feltner would be amenable to personal jurisdiction in the Central District if the Central District were a separate state, venue was proper under 28 U.S.C. § 1400(a).[4]
 
 III. SUMMARY JUDGMENT
 
 15
 Feltner contends that summary judgment was inappropriately granted because: (A) Columbia was not the proper party to the copyright claims; (B) there was a triable issue of fact as to whether Columbia's termination of the license agreements was proper; (C) there was a triable issue of fact as to whether Feltner would reasonably have interpreted Columbia's actions as terminating the license agreements; and (D) triable issues of fact existed concerning Feltner's allegations that Columbia was precluded from terminating the agreements on the basis of estoppel, negligent misrepresentation, and an oral contract not to terminate. None of Feltner's contentions has merit.
 
 
 16
 A. Feltner's Standing Argument Is Not Properly Before This Court.
 
 
 17
 Feltner argues that the district court's summary judgment ruling was erroneous because, under 17 U.S.C. § 501(b), Columbia was not the proper party to the copyright claims. Feltner never raised this argument in his opposition to Columbia's summary judgment motion. In fact, in his "Statement of Genuine Issues," Feltner agreed that "Columbia holds the copyright to each ... episode" at issue. While Feltner now contends that the issue was "raised in a Motion to Vacate filed under F.R.Civ.P. 60(b)," this contention is not supported by the record: The district court denied Feltner's motion for leave to file the motion to vacate, impliedly finding that Feltner had failed to meet the prerequisites for relief under F.R.Civ.P. 60(b) and Central District Local Rule 7.16.
 
 
 18
 A district court's decision not to consider an argument raised for the first time on reconsideration is reviewed for abuse of discretion. Rosenfeld v. United States Dept. of Justice, 57 F.3d 803, 811 (9th Cir.1995). Because Feltner has failed to demonstrate that the district court abused its discretion in refusing to consider his motion to vacate, Feltner's standing argument may not be considered on appeal.
 
 
 19
 B. Columbia's Termination Was Proper.
 
 
 20
 Feltner argues that a triable issue of fact exists as to whether the defendants' breach of the license agreements was sufficiently material to enable Columbia to terminate the agreements. In support of his argument, Feltner cites Rano v. Sipa Press, Inc., 987 F.2d at 586-87, and Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1529-31 (9th Cir.1993), rev'd on other grounds, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), which held that the licensing agreement at issue was not rightfully terminated because the licensee's breach did not "go to the root of the matter," Fantasy, 984 F.2d at 1530 (citations omitted), or did not "constitute a total failure in the performance of the contract." Rano, 987 F.2d at 586 (citation and internal quotation omitted).
 
 
 21
 However, both Rano and Fantasy dealt with licensing agreements that did not have an express contractual provision authorizing termination. See Rano, 987 F.2d at 583; Fantasy, 984 F.2d at 1529. In contrast, each of the license agreements in this case has an express provision authorizing Columbia to terminate the agreement if the licensee "fails to make payments of the License Fee or any portion thereof when due." Because these agreements expressly consider the failure to timely pay royalties material, Columbia's termination of the agreements was proper. See Fantasy, 984 F.2d at 1529 (stating that "a bona fide dispute concerning royalty payments does not automatically constitute a material breach unless the contract so provides ") (emphasis added and omitted).
 
 
 22
 C. Feltner Could Not Reasonably Interpret Columbia's Actions as Anything But Termination.
 
 
 23
 Feltner's version of the facts surrounding the termination of the licensing agreements is as follows: In 1989, Feltner began negotiations to purchase WNFT-TV in Jacksonville, Florida. Because he determined that the station needed to cut expenses to operate profitably, he instructed Dan Dayton, his Chief Operating Officer, to negotiate with all of the syndicators supplying programs to WNFT to see if they would be willing to restructure the license agreements. In this regard, Dayton contacted John Darakjy of Columbia, who indicated that Columbia would "work with" Krypton to restructure the deal. Dayton memorialized this conversation in a March 22, 1990 letter.
 
 
 24
 Feltner thereafter purchased WNFT, as well as stations WABM-TV in Birmingham, Alabama and WTVX-TV in West Palm Beach, Florida. From March 1990 until Columbia filed its lawsuit in December of 1991, Columbia and the Krypton entities engaged in protracted negotiations for the restructure of each of the three stations' debt to Columbia. During that time, at least thirteen written proposals of restructure were exchanged--six from Columbia and seven from Krypton. The parties were unable to reach an agreement "primarily because Columbia insisted upon a large up-front payment and refused to spread out the payments over the entire term of the contract notwithstanding defendants' protests that the stations were not earning enough money to make those payments."
 
 
 25
 On July 8, 1991, Columbia sent the first of three purported termination letters.[5] Despite the letter's threatening language, Columbia made no attempts to enforce the letter's demands and sent three more restructure proposals in September and October of 1991. On October 17, 1991, Columbia sent another termination letter similar to the letter of July 8. Like the July 8 letter, the October 17 letter was subsequently contradicted by a restructure proposal sent on December 10, 1991.
 
 
 26
 Based on these facts, Feltner argues that a triable issue of fact exists as to whether he should have reasonably interpreted Columbia's conduct to effectuate a termination of the licensing agreements. In particular, Feltner cites to the ambiguity caused by the restructuring proposals sent by Columbia after the purported termination letters of July 8 and October 17 and the inconsistency of the July 8 and October 17 letters' simultaneous demands of full accelerated payment and termination of the license agreements.
 
 
 27
 Feltner's arguments are unavailing. Both the July 8 and October 17 letters are clear and unequivocal. While Feltner argues that the October 17 letter was rendered ambiguous by the letter of December 10, the December 10 letter clearly indicates that it was sent "in the interest of resolving Columbia's claims without resorting to litigation," and that if Krypton "continu[ed] its deliberate campaign of copyright infringement," Columbia would file a lawsuit. Nor could the other restructure proposals be interpreted as anything other than last-ditch efforts to strike a deal.
 
 
 28
 Likewise, the October 17 letter was not rendered ambiguous by the simultaneous exercise of the acceleration and termination provisions. The contract clearly indicates that in the event of a failure to pay royalties, Columbia could terminate the agreement and would be immediately entitled to "the entire unpaid balance of the license fee." Thus, the October 17 letter's exercise of both the acceleration provision and termination provision could not reasonably be interpreted as ambiguous.
 
 
 29
 D. Feltner's Defenses Fail as a Matter of Law.
 
 
 30
 In his reply brief to this court, Feltner argues that, despite the apparent termination, there was nevertheless a triable issue of material fact concerning whether Columbia was precluded from terminating on the basis of estoppel, negligent misrepresentation, or an oral contract not to terminate. Feltner's evidence fails to raise a triable issue of fact as to any of these defenses.
 
 
 31
 A claim of promissory estoppel requires, among other things, "a promise clear and unambiguous in its terms," and injury caused by the promisee's reasonable reliance on the promise. Laks v. Coast Federal Sav. & Loan Ass'n, 60 Cal.App.3d 885, 131 Cal.Rptr. 836, 839 (1976). The only "promise" that could reasonably be inferred from Feltner's evidence was a promise by Columbia to "work with" Krypton. However, this is not a "clear and unambiguous" promise, for it clearly contemplated further negotiations to finalize the terms of the restructure. Id. Furthermore, to the extent it was an adequate promise, Feltner was not injured because Columbia performed the promise by negotiating extensively from March 1990 until December 1991. Thus, Feltner's promissory estoppel claim must fail.
 
 
 32
 Feltner's negligent misrepresentation claim is similarly defective. Negligent misrepresentation is "a statement made for the guidance of others which is not warranted by the information of the person making it." Grenell v. City of Hermosa Beach, 103 Cal.App.3d 864, 163 Cal.Rptr. 315, 319 (1980); see Cal.Civ.Code § 1572(2). Although Feltner argued in the district court that Columbia had already restructured the license agreement with Krypton's predecessor and that Columbia's practice was not to undertake subsequent restructures of licenses that had already been restructured, Feltner has failed to present sufficient evidence for a reasonable jury to conclude that this was in fact Columbia's practice. Thus, Feltner has failed to raise a triable issue of fact on his negligent misrepresentation claim.
 
 
 33
 Lastly, Feltner's breach of oral contract claim is properly dismissed on summary judgment. "An agreement to make in the future such a contract as may be agreed upon at a later time amounts to nothing, is not binding, and cannot be made the basis of a cause of action." Forgeron Inc. v. Hansen, 149 Cal.App.2d 352, 308 P.2d 406, 411 (1957) (quoting 12 Cal.Jur.2d, Contracts, § 111); accord Kruse v. Bank of America, 202 Cal.App.3d 38, 248 Cal.Rptr. 217, 229 (1988), cert. denied, 488 U.S. 1043, 109 S.Ct. 869, 870, 102 L.Ed.2d 993 (1989). Because the facts presented by Feltner indicate, at best, an agreement to negotiate in the future, Feltner has failed to raise a triable issue of fact on his oral contract claim.[6]
 
 
 34
 In sum, Feltner failed to raise a triable issue of material fact as to whether Columbia validly terminated the license agreements by October 17, 1991. Summary judgment against Feltner for copyright infringements occurring after that date was therefore proper.
 
 IV. COURT TRIAL ON STATUTORY DAMAGES
 
 35
 Section 504(c)(1) of the Act allows a copyright holder to elect statutory damages in lieu of actual damages. If statutory damages have been elected, and a defendant is found to have infringed, damages are to be awarded "in a sum of not less than $500 or more than $20,000 as the court considers just." 17 U.S.C. § 504(c)(1). Additionally, if the "court finds ... that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $100,000," and if the court finds that the infringement was committed innocently "the court [in] its discretion may reduce the award of statutory damages to a sum of not less than $200." Id. § 504(c)(2). Columbia elected statutory damages. Over Feltner's objection, the district court held a bench trial on damages, found Feltner's infringement to be willful, and fixed the statutory damages at $20,000 per violation.
 
 
 36
 Feltner argues that the district court's denial of his request for a jury trial on the issue of statutory damages was erroneous, both as a matter of statutory interpretation and because it deprived him of his Seventh Amendment right to a jury trial. We reject Feltner's argument.
 
 
 37
 In Sid & Marty Krofft Television v. McDonald's Corp., 562 F.2d 1157 (9th Cir.1977), we interpreted the analogous statutory damages provision of the 1909 Copyright Act and held that the amount of statutory damages "is properly addressed to the court, not the jury." Id. at 1177. In so holding, the court relied on the statute's language, which provided for the award of "such damages as to the court shall appear to be just." Id. at 1177 n. 5 (quoting 17 U.S.C. § 101(b)) (emphasis added). The Krofft court reasoned: "The jury plays no role in this determination, because 'the court 's conception of what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement, and the like, is made the measure of the damages to be paid....' " Id. at 1177 (quoting L.A. Westermann Co. v. Dispatch Printing Co., 249 U.S. 100, 106, 39 S.Ct. 194, 196, 63 L.Ed. 499 (1919)) (emphasis in original).
 
 
 38
 Feltner argues that Krofft is distinguishable because the 1909 Act, interpreted by Krofft, gave the court the option of awarding "in lieu" (statutory) damages while the 1976 Act gives the option to elect statutory damages to the plaintiff. However, Krofft 's rationale is equally applicable to § 504 of the 1976 Act. Section 504(c)(1) of the 1976 Act, like § 101(b) of the 1909 Act, provides for the award of such damages (within fixed limits) "as the court considers just." 17 U.S.C. § 504(c)(1). If Congress intended to overrule Krofft by having the jury determine the proper award of statutory damages, it would have altered this language.
 
 
 39
 As for Feltner's contention that the district court's ruling deprived him of his Seventh Amendment right to a jury trial, we agree with those cases holding that the Seventh Amendment does not provide a right to a jury trial on the issue of statutory damages because an award of such damages is equitable in nature. See Cable/Home Communication Corp. v. Network Prods., Inc., 902 F.2d 829, 852-53 (11th Cir.1990); Oboler v. Goldin, 714 F.2d 211, 213 (2d Cir.1983); Twentieth Century Music Corp. v. Frith, 645 F.2d 6, 7 (5th Cir.1981); Raydiola Music v. Revelation Rob, Inc., 729 F.Supp. 369 (D.Del.1990); cf. Video Views, Inc. v. Studio 21, Ltd., 925 F.2d 1010, 1014-16 (7th Cir.), cert. denied, 502 U.S. 861, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991) (holding that the amount of statutory damages is decided by the court but the issue of willfulness should be tried to the jury). But see Cass County Music Co. v. C.H.L.R., Inc., 88 F.3d 635 (8th Cir.1996) (holding that Seventh Amendment provides right to have jury assess statutory damages); Gnossos Music v. Mitken, Inc., 653 F.2d 117, 119-21 (4th Cir.1981) (same); Educational Testing Services v. Katzman, 670 F.Supp. 1237 (D.N.J.1987) (same). See generally 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 14.04[C] (1995) (listing cases and describing those cases allocating decision to judge as "the better view").
 
 
 40
 The district court properly denied Feltner's request for a jury trial on the issue of statutory damages.
 
 V. WILLFULNESS FINDING
 
 41
 "Willful" within the meaning of § 504(c)(2) means "with knowledge that the defendant's conduct constitutes copyright infringement." Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1335 n. 3 (9th Cir.1990) (quoting 3 Nimmer on Copyright § 1404[B], at 14-40.2-.3 (1989)), cert. denied, 498 U.S. 1109, 111 S.Ct. 1019, 112 L.Ed.2d 1100 (1991). "To refute evidence of willful infringement, [the defendant] must not only establish its good faith belief in the innocence of its conduct, it must also show that it was reasonable in holding such a belief." Id. at 1336.
 
 
 42
 Feltner contends that the district court's findings of willfulness are unsupported by the evidence. In support of this contention, Feltner presents his version of how the evidence should be interpreted. Feltner, however, neglects to mention that the district court's finding is reviewed for clear error. See Fed.R.Civ.P. 52(a); Price v. United States Navy, 39 F.3d 1011, 1021 (9th Cir.1994). Feltner's arguments, at best, demonstrate that the facts presented to the district court were susceptible to more than one interpretation. Considering that all 440 of the infringing episodes were broadcast after Columbia's clear termination of the licensing agreements on October 17, 1991, and 415 of them were broadcast after the complaint in this action was filed, we cannot say that the district court's finding was clearly erroneous.
 
 
 43
 VI. EVIDENTIARY RULINGS REGARDING FELTNER'S RELATIONSHIP TO COUNSEL
 
 
 44
 Prior to trial, the district court granted Columbia's motion in limine to preclude Feltner from introducing evidence relating to advice of counsel because Feltner refused to answer questions on the issue during his deposition. Feltner now argues that the in limine order precluded Columbia from questioning Feltner at trial about whether his counsel kept him apprised of the progress of the litigation, and the district court's failure to prevent Columbia from doing so was erroneous. Feltner's argument fails for two reasons. First, because he objected to Columbia's questions at trial only on relevance and that on calling for a legal conclusion, he waived the objection he now raises. Furthermore, even if the objection was not waived, the testimony admitted was not precluded by the in limine order because the testimony concerned Feltner's knowledge of the litigation, not whether he relied on the advice of counsel.
 
 
 45
 VII. CALCULATION OF THE NUMBER OF INFRINGEMENTS
 
 
 46
 A. The Stations Were Separate Infringers.
 
 
 47
 Section 504(c)(1) of the Act provides that statutory damages may be awarded "for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally...." Thus, when statutory damages are assessed against one defendant or a group of defendants held to be jointly and severally liable, each work infringed may form the basis of only one award, regardless of the number of separate infringements of that work. See Mason v. Montgomery Data, Inc., 967 F.2d 135, 143-44 (5th Cir.1992). However, "where separate infringements for which two or more defendants are not jointly liable are joined in the same action, separate awards of statutory damages would be appropriate." H.R.Rep. No. 94-1476, 94th Cong., 2d Sess., at 162, reprinted in 1976 U.S.Code Cong. and Admin.News 5778; Mason, 967 F.2d at 144.
 
 
 48
 By finding that "the 'Who's the Boss?' episodes broadcast by WNFT are separate acts of infringement from the episodes broadcast by WTVX," the district court impliedly found that WNFT and WTVX were not joint tortfeasors with respect to the broadcasting of these episodes. Feltner, relying on RCA/Ariola International, Inc. v. Thomas & Grayston Co., 845 F.2d 773, 778-779 (8th Cir.1988), argues that this finding was erroneous because Columbia had repeatedly alleged in its complaint that all of the defendants acted together and should be treated as one. See ER Tab 1, First Amended Complaint, pp 18, 19, 31-114.
 
 
 49
 RCA/Ariola is distinguishable. In that case, the district court had found a group of defendants to be jointly and severally liable. Id. at 778. On appeal, the Eighth Circuit rejected the plaintiff's argument that the district court's finding was erroneous. Because the plaintiff asserted in its summary judgment papers that the defendants were jointly and severally liable, the plaintiff "invited any error and ha[d] no grounds to complain." Id. at 779. In contrast to RCA/Ariola, the district court's finding was contrary to the allegations in the complaint and it is the defendant who is challenging the findings. Feltner has not presented sufficient facts to develop a "judicial estoppel" argument. See Rockwell International v. Hanford Atomic Metal Trades, 851 F.2d 1208, 1210 (9th Cir.1988) (defining purpose of judicial estoppel as "preventing the use of inconsistent assertions that would result in an 'affront to judicial dignity' and 'a means of obtaining unfair advantage' ") (citations omitted). Thus, despite the fact that the district court's finding on this issue was both favorable to the plaintiff and contrary to the complaint, Feltner has failed to demonstrate that the finding was erroneous.[7]
 
 
 50
 B. Each Episode Was a Separate Work.
 
 
 51
 As mentioned, § 504(c)(1) of the Act provides that statutory damages may be awarded "for all infringements involved in the action, with respect to any one work." Section 504(c)(1) further provides that "for purposes of this subsection, all the parts of a compilation or derivative work constitute one work." The district court found that each infringed episode of the television series constituted a separate work for purposes of § 504(c)(1). Feltner argues that each series, and not each episode, constitutes a work.
 
 
 52
 The two courts to have addressed whether each episode of a television series constitutes a separate work have both held in the affirmative. Gamma Audio & Video, Inc. v. Ean-Chea, 11 F.3d 1106, 1116-17 (1st Cir.1993); Twin Peaks Prods., Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1380-81 (2d Cir.1993).[8] Feltner attempts to distinguish these cases by arguing that the episodes at issue are not separate works because they do not have independent economic value.
 
 
 53
 While Feltner correctly states the proper test to apply in analyzing whether each episode is a separate work, see Gamma Audio, 11 F.3d at 1117 (focusing on whether each television episode "has an independent economic value and is, in itself, viable"); Walt Disney Co. v. Powell, 897 F.2d 565, 569 (D.C.Cir.1990) (stating that "separate copyrights are not distinct unless they can 'live their own copyright life' ") (quoting Robert Stigwood Group Ltd. v. O'Reilly, 530 F.2d 1096, 1105 (2d Cir.), cert. denied, 429 U.S. 848, 97 S.Ct. 135, 50 L.Ed.2d 121 (1976)), the facts upon which Feltner bases his argument--that the episodes are licensed as a series--were addressed and rejected in Gamma Audio.
 
 
 54
 In Gamma Audio, the district court found that the episodes were a single work because the copyright holder sold only complete sets of the series to video stores. 11 F.3d at 1117. The First Circuit found this unpersuasive. Instead, the court found significant "the fact that (1) viewers who rent the tapes from their local video stores may rent as few or as many tapes as they want, may view one, two, or twenty episodes in a single setting, and may never watch or rent all of the episodes; and (2) each episode in the ... series was separately produced." Id.
 
 
 55
 In this case, the different episodes were broadcast over the course of weeks, months, and years. From this fact, it was reasonable for the district court to conclude that, as in Gamma Audio, viewers may watch as few or as many episodes as they want, and may never watch all of the episodes. Additionally, it was clear from the record that the episodes could be repeated and broadcast in different orders. Nor does Feltner contest that the episodes were separately written, produced, and registered. Thus, this case comes squarely within the holdings of Gamma Audio and Twin Peaks.
 
 
 56
 Feltner also contends that each series was an anthology, a type of "compilation" under § 504(c). See § 101 (defining "compilation" as including "collective works"); id. (defining "collective work" as "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole"). Feltner argues that the question of whether the episodes amounted to a "collective whole" was a factual one. Thus, argues Feltner, the district court's refusal to allow Feltner to produce evidence on the issue, which would have consisted of a license agreement and expert testimony that "programs of this nature are considered to be anthologies," was error.
 
 
 57
 Even were Feltner allowed to prove that the programs were considered to be "anthologies," he would still have to show that they consisted of "separate and independent works ... assembled into a collective whole." As mentioned, the evidence was uncontroverted that the episodes were broadcast over the course of weeks, months, or even years, and could be repeated and rearranged at the option of the broadcaster. Because this evidence supports the conclusion that the episodes were not "assembled into a collective whole," it was not error for the district court to reject Feltner's contention that each series was a "compilation" under § 504(c).
 
 
 58
 The district court did not err in calculating the number of infringements.
 
 VIII. AMOUNT OF STATUTORY DAMAGES AWARDED
 
 59
 "[T]he court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir.1984). "Within these limits the court's discretion and sense of justice are controlling." Peer International, 909 F.2d at 1336 (quoting F.W. Woolworth Co. v. Contemporary Arts, 344 U.S. 228, 232, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952)). Feltner argues that the court's award was erroneous because it failed to take into account certain factors and because it failed to articulate its reasons for the award. However, considering the numerous willful infringements involved, for which the maximum award is $100,000 per work infringed, the district court's award of $20,000 per work infringed is well within the statutory limits and is not an abuse of discretion.
 
 IX. COLUMBIA'S FEES
 
 60
 "The decision to award fees, and the amount of fees awarded, are both reviewed for abuse of discretion." Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 886 F.2d 1545, 1556 (9th Cir.1989), cert. denied, 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990). While a plaintiff in a copyright action is generally awarded fees by virtue of prevailing in the action, the plaintiff still bears the burden of showing the time spent and hourly rate to be reasonable. Id. at 1556-57. Feltner challenges the district court's fee award on three grounds: (1) Feltner was not given enough time to oppose it; (2) "there was no effort to delete items related to unrelated matters"; and (3) the district court granted Columbia all of the fees requested without providing any discussion or explanation.
 
 
 61
 Feltner's first two challenges miss the mark. As to the first, Feltner has not demonstrated that the district court's refusal to grant a two-week continuance was an abuse of discretion. The district court did grant a one-week continuance, giving Feltner two weeks to prepare an opposition. As to the second, Feltner has not cited any specifics in support of his contention that some entries were not "reasonably necessary to the successful prosecution of [Columbia's] copyright claims," Frank Music, 886 F.2d at 1557, and has therefore failed to show that the district court's refusal to delete any entries was an abuse of discretion.
 
 
 62
 Feltner's third challenge, however, has merit. This Circuit has a "long-standing insistence upon a proper explanation of any fee award" by a district court. Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 623 (9th Cir.1993); see also Frank Music, 886 F.2d at 1557 ("In setting a reasonable attorneys fee, the district court should make specific findings of the rate and hours it has determined to be reasonable."); Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1385 (9th Cir.1984) ("The district court appears to have accepted uncritical plaintiff's representations concerning the time expended on this case, and it awarded the entire amount requested by plaintiff. Such a procedure is inadequate."). The district court, rather than providing a reasoned explanation of its fee award, simply included the entire amount requested in the final judgment. Thus, without expressing any opinion on whether or not the fees claimed were reasonable, we must vacate the district court's fee award and remand the matter so that the district court may provide a reasoned explanation supporting the amount of fees awarded.
 
 X. APPELLANT'S FEES
 
 63
 Feltner and Krypton International contend that they were entitled to attorneys' fees as prevailing parties under the license agreements. Additionally, Krypton International asserts that it was entitled to attorneys fees under 17 U.S.C. § 505 because it prevailed on Columbia's copyright claims.
 
 
 64
 As to their claim for fees under the license agreement, California law governs. Diamond v. John Martin Co., 753 F.2d 1465, 1467 (9th Cir.1985). Under California law, a defendant in a contract action is not a prevailing party when the plaintiff voluntarily dismisses the action. Cal.Civ.Code § 1717(b)(2). This is so regardless of whether the dismissal is with or without prejudice. D & J, Inc. v. Ferro Corp., 176 Cal.App.3d 1191, 222 Cal.Rptr. 656, 657 (1986). Thus Appellants were not prevailing parties under the license agreement.[9]
 
 
 65
 As to Krypton International's claim for fees pursuant to 17 U.S.C. § 505, it has failed to show that the district court's denial of its fee request was an abuse of discretion. See, e.g., National Conference of Bar Examiners v. Multistate Legal Studies, Inc., 692 F.2d 478, 488 & n. 12 (7th Cir.1982), cert. denied, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983).
 
 CONCLUSION
 
 66
 Except for the district court's award of attorneys' fees to Columbia, we affirm the decision of the district court in all respects. We vacate the fee award and remand the matter on a limited basis so that the district court may provide a reasoned explanation of the amount of fees awarded. We retain jurisdiction over this appeal during the pendency of the limited remand, and the district court shall forward a copy of its order awarding fees within sixty days of the issuance of this remand.
 
 
 
 [1]
 Krypton International and its subsidiaries-Krypton Broadcasting, Inc.; Krypton Broadcasting of Birmingham, Inc.; Krypton Broadcasting of Jacksonville, Inc.; and Krypton Broadcasting of Ft. Pierce, Inc.--are collectively referred to as "the Krypton defendants."
 
 
 [2]
 Krypton International is only appealing the district court's dismissal of its counterclaims and the district court's denial of its motion for fees
 
 
 [3]
 28 U.S.C. § 1400 provides:
 Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works may be instituted in the district in which the defendant or his agent resides or may be found.
 
 
 [4]
 The district court also relied on the license agreements' forum selection clauses to confer venue. While we agree with the district court that the forum selection clauses were appropriately enforced against Feltner, we need not analyze the issue here
 
 
 [5]
 The letter demanded that WNFT cease and desist from the broadcast of the formerly-licensed programs and demanded the immediate accelerated payment of $2,733,644.18
 
 
 [6]
 While Feltner raises the claims of promissory estoppel, negligent misrepresentation, and breach of oral contract as defenses to Columbia's copyright claim, the Krypton defendants argued these theories as part of a counterclaim filed against Columbia. As the above discussion makes clear, the district court properly granted summary judgment in favor of Columbia on the Krypton defendants' counterclaims
 
 
 [7]
 Feltner's other argument on this issue--that the finding was erroneous because Feltner was jointly and severally liable with all three stations--is similarly meritless. Because the stations were not jointly and severally liable with each other, Feltner's liability vis-a-vis the stations merely renders him jointly and severally liable for each station's infringements--it does not convert the stations' separate infringements into one
 
 
 [8]
 We note that the Eleventh Circuit, in another case in which Feltner was the defendant, recently agreed that each episode of a television series was a separate work. MCA Television Ltd. v. Feltner, 89 F.3d 766, 768-70 (11th Cir.1996)
 
 
 [9]
 In reply, Appellants argue that they should have been awarded fees under Rule 11. However, because Appellants never brought a Rule 11 motion in the district court, this argument is without merit. See Fed.R.Civ.P. 11(c)(1)(A) ("A motion for sanctions under this rule shall be made separately from other motions or requests....")