**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DESIRE, LLC, a California limited liability company, *Plaintiff-Appellee*, v. MANNA TEXTILES, INC., a New York corporation; A.B.N., INC., DBA Wearever, Inc., a New York corporation; TOP FASHION OF N.Y., INC., a New York corporation; Pride & Joys, Inc., a New York corporation; 618 MAIN CLOTHING CORP., DBA 10 Spot, DBA Madgra, a New Jersey corporation, *Defendants-Appellants.* | No. 17-56641 D.C. No. 2:16-cv-04295-DMG-JEM OPINION |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted March 5, 2019
Pasadena, California

Filed February 2, 2021

Before:  Kim McLane Wardlaw and Mark J. Bennett,
Circuit Judges, and William K. Sessions III,[*]
District Judge.

Opinion by Judge Bennett;
Partial Concurrence and Partial Dissent by Judge Wardlaw

## SUMMARY[**]

### Copyright

The panel affirmed in part, reversed in part, and vacated a judgment in favor of the plaintiff and remanded for further proceedings in a copyright infringement action.

The district court held, on summary judgment, that plaintiff, a fabric supplier, owned a valid copyright in a floral print textile design and that the design was entitled to broad copyright protection.  A jury returned a verdict for plaintiff, finding that three defendants willfully infringed the design and a fourth innocently infringed it.  Plaintiff elected to claim statutory damages in lieu of actual damages, and the district court assessed five statutory damages awards.

Affirming in part, the panel concluded that plaintiff owned a valid copyright.  The panel held that regardless of the design's similarity to other designs, the design was

---

[*] The Honorable William K. Sessions III, United States District Judge for the District of Vermont, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

original because it was independently created.  Further, the design possessed the necessary "modicum of creativity" to be entitled to a valid copyright.  The panel also held that the district court correctly extended broad copyright protection to the design as a matter of law because the flowers and the arrangement of those flowers was stylized, the design was an original creation, and there is a wide range of expression for selecting, coordinating, and arranging floral elements in stylized fabric designs.

Reversing in part, the panel held that the district court erred in permitting multiple awards of statutory damages. The panel held that the district court correctly apportioned joint and several liability among all defendants on the grounds that (1) where an upstream defendant causes a downstream defendant's infringement, the upstream defendant is a joint tortfeasor in, and therefore jointly and severally liable for, the plaintiff's harm caused by the downstream defendant's conduct; and (2) where a downstream infringer's conduct is not the legal cause of the upstream defendant's infringement, the downstream infringer will not be responsible, jointly and severally, for the upstream defendant's wrongdoing.  Nonetheless, the Copyright Act permitted only one award of statutory damages under 17 U.S.C. § 504(c)(1) because defendants infringed only one work.  The panel held that the Act did not authorize the district court to issue multiple statutory damages awards where one infringer was jointly and severally liable with all other infringers, but the other infringers were not completely jointly and severally liable with one another.  The panel vacated the district court's judgment awarding plaintiff multiple awards of statutory damages and remanded for further proceedings.

Concurring in part and dissenting in part, Judge Wardlaw dissented from the majority's conclusion that plaintiff was entitled to only one award of statutory damages against the five defendants whom the jury concluded separately infringed varying exclusive rights in copyright. Judge Wardlaw wrote that it was unnecessary for the majority to reach the question because none of the five separate, independently liable, copyright infringers was actually found jointly and severally liable with one another. Further, the majority's rule was contrary to controlling Ninth Circuit precedent on statutory damages in copyright, was an atextual reading of the Copyright Act, and created perverse incentives for copyright litigation.

## COUNSEL

Aaron L. Renfro (argued), Samuel G. Brooks, Melinda Evans, and Scott P. Shaw, Call & Jensen APC, Newport Beach, California, for Defendants-Appellants.

Stephen M. Doniger (argued) and Frank Gregory Casella, Doniger Burroughs, Venice, California, for Plaintiff-Appellee.

## OPINION

BENNETT, Circuit Judge:

Desire, LLC ("Desire") sued Manna Textiles, Inc. ("Manna"), A.B.N., Inc. ("ABN"), Top Fashion of N.Y., Inc. ("Top Fashion"), Pride & Joys, Inc. ("Pride & Joys"), and 618 Main Clothing Corp. ("618 Main"), as well as others who are no longer parties, for copyright infringement. The district court held, on summary judgment, that Desire owned a valid copyright in the fabric design that was the subject of the action (the "Subject Design"), and that the Subject Design was entitled to broad copyright protection. The jury returned a verdict for Desire, finding that Manna, ABN, and Top Fashion willfully infringed the Subject Design, and that Pride & Joys and 618 Main innocently infringed the Subject Design. Desire elected to claim statutory damages in lieu of actual damages, and the district court, based on a pretrial ruling on the question, assessed five statutory damages awards totaling $480,000 (with that entire amount assessed jointly and severally against Manna).

On appeal, Manna, ABN, and Top Fashion challenge the district court's orders on summary judgment as well as its holding that Desire is entitled to receive multiple awards of statutory damages. Although we hold that the district court did not err in granting summary judgment for Desire on the validity of its copyright and the scope of the Subject Design's copyright protection, we disagree with the district court's holding that Desire is entitled to multiple statutory damages awards. We therefore affirm in part, reverse in part, vacate the judgment awarding Desire multiple awards of statutory damages, and remand to the district court for further proceedings.

## I.   FACTUAL BACKGROUND AND PROCEEDINGS BELOW

Desire is a Los Angeles-based fabric supplier. Desire purchased the Subject Design, which is a two-dimensional floral print textile design identified as "CC3460," and all rights to the Subject Design from Cake Studios, Inc. ("Cake") for $475. Desire registered the Subject Design with the United States Copyright Office on June 26, 2015.

A Cake designer "created [the Subject Design] using their own imagery" in Adobe Photoshop. "CC3460 is an original pattern created in Adobe Photoshop using an original flower image created by [a Cake] designer which was then imported into Photoshop so that the Photoshop editing tools could be used to adjust, stylize and arrange the floral elements into the original artwork that became CC3460. There is no pre-existing artwork from Photoshop in design CC3460."

On October 15, 2015, Top Fashion, a women's clothing manufacturer, purchased four yards of fabric bearing the Subject Design from Desire. Top Fashion used this fabric to secure a garment order from Ashley Stewart, Inc. ("Ashley Stewart"), a women's clothing retailer. However, Top Fashion and Desire had a dispute over the fabric price. Top Fashion then showed the Subject Design to Manna, a fabric supplier. Manna gave the Subject Design to its independent designer, Matty Mancuso, who in turn sent the design to Longwell Textile ("Longwell") in China with instructions to modify it. Upon receiving the modified design from Longwell, Mancuso replied, "After looking at this—don't know if you change [sic] it enough?" A Longwell representative responded: "I changed 30–40% on original, pls kindly approve . . . ." Manna registered the design (the

"Accused Design") with the United States Copyright Office on December 1, 2015.

Between October 2015 and May 2016, Manna sold fabric bearing the Accused Design to ABN, Top Fashion, and Pride & Joys (the "Manufacturer Defendants"), all women's clothing manufacturers. These manufacturers created garments from that fabric and sold them to women's clothing retailers 618 Main, Burlington Coat Factory Direct Corp. ("Burlington"), and Ashley Stewart (the "Retail Defendants").

Thus, as alleged, Manna infringed Desire's copyright by selling fabric bearing the Accused Design to the Manufacturer Defendants. The Manufacturer Defendants then each allegedly committed a separate act of infringement in their sales to the individual Retail Defendants, who in turn allegedly committed acts of infringement in their sales to consumers. However, Desire does not allege that the Manufacturer Defendants infringed in concert, nor that the Retail Defendants acted in concert to infringe Desire's copyright.

Below is a chart showing the three "chains" of infringement that Desire alleged here.



In June 2016, Desire sued Manna, ABN, Top Fashion, Burlington, and Ashley Stewart, and later added Pride & Joys and 618 Main, alleging that all had willfully infringed Desire's copyright by manufacturing and/or selling fabric and garments bearing the Accused Design.

All parties moved for summary judgment. The district court partly granted Desire's motion and denied defendants' motion. The district court concluded that there were no triable issues of fact as to (1) Desire's ownership of the Subject Design, rejecting defendants' arguments that the design was not original, or (2) whether Manna, ABN, and Top Fashion had access to the Subject Design. The district court also concluded that the Subject Design was entitled to broad copyright protection. The court identified triable issues of fact as to (1) whether the Accused Design was substantially similar to the Subject Design; and (2) whether defendants willfully infringed the Subject Design. The court also held that if Desire prevailed, it would be potentially entitled to a maximum of seven awards of statutory damages with joint and several liability imposed as follows:

(1) Against Manna individually, for copying the Subject Design and distributing fabric bearing the Accused Design to the Manufacturer Defendants.

(2) Against Manna and Top Fashion jointly and severally, for Top Fashion's sale of infringing garments to Ashley Stewart.

(3) Against Manna, Top Fashion, and Ashley Stewart, jointly and severally, for Ashley Stewart's display and sale of infringing garments to consumers.

(4) Against Manna and ABN, jointly and severally, for ABN's sale of infringing garments to Burlington.

(5) Against Manna, ABN, and Burlington, jointly and severally, for Burlington's display and sale of infringing garments to consumers.

(6) Against Manna and Pride & Joys, jointly and severally, for Pride & Joys's sale of infringing garments to 618 Main.

(7) Against Manna, Pride & Joys, and 618 Main, jointly and severally, for 618 Main's display and sale of infringing garments to consumers.

The jury returned a verdict in favor of Desire, finding that Manna, ABN, and Top Fashion willfully infringed the Subject Design, and that Pride & Joys and 618 Main innocently infringed the Subject Design.[1] The jury awarded statutory damages to Desire: $150,000 against Manna, $150,000 against ABN, $150,000 against Top Fashion,

---

[1] Burlington and Ashley Stewart settled before trial.

$20,000 against Pride & Joys, and $10,000 against 618 Main. Although the jury's verdict form did not specify joint and several liability for any of its damages awards, the judgment read alongside the district court's pretrial order on the parties' potential liability, establishes the parties' joint and several liability for each award: $150,000 against Manna alone; $150,000 against ABN (jointly and severally with Manna); $150,000 against Top Fashion (jointly and severally with Manna); $20,000 against Pride & Joys (jointly and severally with Manna); and $10,000 against 618 Main (jointly and severally with Pride & Joys and Manna). The parties do not dispute this.

Manna, ABN, Top Fashion, Pride & Joys, and 618 Main ("Appellants") timely appealed.[2]

## II.  DISCUSSION

### A.  Standard of Review

"We review the district court's grant of summary judgment de novo." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 822 (9th Cir. 2011). We review for abuse of discretion the district court's rulings on

---

[2] The record reflects that 618 Main and Pride & Joys have satisfied the judgments entered against them. Payment of a judgment does not foreclose an appeal. *Milicevic v. Fletcher Jones Imps., Ltd.*, 402 F.3d 912, 915 (9th Cir. 2005). An exception to that rule exists where "there is some contemporaneous agreement not to appeal, implicit in a compromise of the claim after judgment." *Jones v. McDaniel*, 717 F.3d 1062, 1069 (9th Cir. 2013) (quoting *Milicevic*, 402 F.3d at 915). No party states that there was a contemporaneous agreement not to appeal when the parties paid the judgments against them. 618 Main and Pride & Joys joined the notice of appeal filed in the district court, they have not been dismissed from the appeal, and we consider them parties and subject to our jurisdiction.

motions *in limine*. *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 759 (9th Cir. 2017). We review questions of statutory interpretation de novo. *United States v. Youssef*, 547 F.3d 1090, 1093 (9th Cir. 2008) (per curiam).

**B. The District Court Correctly Held that Desire Owned a Valid Copyright.**

Desire must prove its ownership of a valid copyright to establish copyright infringement. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). "To qualify for copyright protection, a work must be original to the author." *Id.* at 345. "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.*; *see* 1 M. Nimmer & D. Nimmer, Copyright ("Nimmer") §§ 2.01[A], [B] (2020). The parties do not dispute that Desire's copyright registration for the Subject Design "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). To rebut the presumption of validity, Appellants "must simply offer some evidence or proof to dispute or deny [Desire]'s prima facie case . . . ." *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) (citations omitted).

Appellants' challenge is based on Deborah Young's expert report, which concluded that "[t]he flower motif/arrangement of Desire's design is similar to numerous floral motifs found in many prior art materials in the public domain." But Appellants misapprehend the appropriate standard. The "similarity" of one design to another has no bearing on whether Desire "independently created" the subject design. *Feist*, 499 U.S. at 345.

Desire presented undisputed evidence that a Cake designer "created [the Subject Design] using their own imagery" in Adobe Photoshop, and used "no pre-existing artwork from Photoshop." That satisfies the test. *See id.* ("Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying."); *see also* Nimmer § 2.01[A][2].

Appellants have also failed to introduce evidence that the Subject Design lacked the necessary "modicum of creativity" to be entitled to a valid copyright. *Feist*, 499 U.S. at 346; *see id.* at 345 ("[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." (quoting Nimmer § 1.08[C][1])).

Thus, the district court correctly held that Desire owned a valid copyright in the Subject Design.

## C. The District Court Correctly Extended Broad Copyright Protection to the Subject Design.

The district court held that the Subject Design was entitled to broad copyright protection as a matter of law because the flowers and the arrangement of those flowers are "stylized and not lifelike," the Subject Design was an original creation, and "there is 'a wide range of expression' for selecting, coordinating, and arranging floral elements in stylized fabric designs." We agree.

To establish copyright infringement, Desire must show that Appellants copied the "constituent elements of the [Subject Design] that are original," *Feist*, 499 U.S. at 361, which requires a showing that (1) Appellants had access to

the Subject Design, which is undisputed, and (2) "the two works are substantially similar," *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012), *abrogated on other grounds as recognized by Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194, 1198 (9th Cir. 2020). Before analyzing substantial similarity, we determine whether a copyright is entitled to "thin" or "broad" protection. *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010). The scope of protection depends on "the breadth of the possible expression" of a work's ideas. *Id.* at 913.

> If there's a wide range of expression . . . , then copyright protection is "broad" and a work will infringe if it's "substantially similar" to the copyrighted work. If there's only a narrow range of expression . . . , then copyright protection is "thin" and a work must be "virtually identical" to infringe.

*Id.* at 913–14 (citations omitted); *see also Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (concluding that a glass-in-glass jellyfish sculpture was entitled to thin protection due to the narrow range of expression).

In *L.A. Printex*, we held that the stylized floral pattern at issue—"a repeating pattern of bouquets of flowers and three-leaf branches"—was entitled to broad copyright protection "[b]ecause there is 'a wide range of expression' for selecting, coordinating, and arranging floral elements in stylized fabric designs . . . ." 676 F.3d at 850 (quoting *Mattel*, 616 F.3d at 913). "'[T]here are gazillions of ways' to combine petals, buds, stems, leaves, and colors in floral designs on fabric, in contrast to the limited number of ways to, for example, 'paint a red bouncy ball on black canvas' or make a lifelike glass-

in-glass jellyfish sculpture." *Id*. at 850–51 (quoting *Mattel*, 616 F.3d at 913–14).

Under *L.A. Printex*, the Subject Design is entitled to broad copyright protection. Like the floral design at issue in *L.A. Printex*, the Subject Design is a stylized floral design. The flowers are "stylized and not lifelike," and the Subject Design "depicts not flowers as they appear in nature but an artistic combination of floral elements that is sufficiently original to merit copyright protection." *Id.* at 850 n.4 (contrasting the stylized floral pattern at issue to the jellyfish sculptures in *Satava*). The Subject Design's floral elements are subject to a wide range of expression. And as we have already held, Appellants failed to create a genuine issue of material fact on the Subject Design's originality. *See supra* Part II.B.  Thus, Desire's "original selection, coordination, and arrangement" of floral elements in the Subject Design is entitled to broad copyright protection as a matter of law. *See L.A. Printex*, 676 F.3d at 850.

Appellants argue that the scope of the Subject Design's copyright protection was a question for the jury, but we have squarely and repeatedly held that the district court must determine the scope of a work's copyright protection in the first instance. *See Mattel*, 616 F.3d at 915 (determining the scope of copyright protection for a doll "sculpt" as a legal matter); *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("[T]he court must define the scope of the plaintiff's copyright—that is, decide whether the work is entitled to 'broad' or 'thin' protection.").

Appellants also argue that elements of the Subject Design that were "not original" should have been "filtered out of the analysis" for purposes of the jury's consideration of whether the Accused Design infringed on Desire's copyright. But, again, Appellants failed to raise a genuine

issue of material fact on the question of the Subject Design's originality. Appellants assert that their expert would have testified that the Subject Design was "essentially copied from pre-existing works," thus rendering the Subject Design "unoriginal." Not so. Young's proffer merely stated that the Subject Design is "similar to numerous floral motifs" found in the "public domain." That the Subject Design may not be novel is immaterial to the question whether it is "original." Desire's uncontested evidence established originality, and the district court correctly afforded the Subject Design broad copyright protection.[3]

## D. The District Court Erred in Permitting Multiple Awards of Statutory Damages.

The district court concluded pretrial that Desire could obtain a separate statutory damages award based on each defendant's infringements—seven possible awards (though two defendants settled before trial reducing the number to five).[4] The district court also concluded, based on the summary judgment record, that "upstream infringers" could be jointly and severally liable for the downstream infringers' infringing conduct.[5] The five statutory damages awards

---

[3] Because we conclude that Young's proffered testimony did not bear on the Subject Design's originality, we also conclude that the district court did not abuse its discretion in excluding those portions of Young's testimony comparing the Subject Design to other floral designs in the public realm.

[4] The settlement, in the district court's view, eliminated award numbers (3) and (5) listed above in Part I.

[5] The dissent, incorrectly, believes this to be a "hypothetical finding" because, it argues, "we review final judgments, not opinions or pre-trial orders." *Dissent* at p. 43 (citing *Jennings v. Stephens*, 574 U.S. 271, 277 (2015)). But the opinion in *Jennings* says nothing about pre-trial orders,

and we have repeatedly stated that "[a]n appeal from a final judgment draws in question *all earlier, non-final orders* and rulings which produced the judgment." *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir. 1984) (emphasis added). While the dissent posits that the judgment is inconsistent with the order, it does not explain the supposed inconsistency. Further, neither party on appeal treats this order as hypothetical or seeks the solution proposed by the dissent. Both parties addressed the question in their briefs and requested that this court adjudicate the issue. Manna argued that the district court's order "conflates the tort principle of vicarious liability with the much broader tort principle of joint and several liability" and asked the panel to reject the district court's conclusions. Desire in turn noted that if this court agrees with its view (and that of the district court) that upstream infringers should be liable for downstream infringements, it should remand for the district court to enter judgment consistent with this ruling. We decline to resolve the case on an issue raised by neither party. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (noting that as a general rule parties "are responsible for advancing the facts and argument entitling them to relief" (citation omitted)).

The district court's conclusion that "seven statutory damages awards are available with joint and several liability imposed consistent with this Order" is unequivocal. Once the jury found defendants liable and determined statutory damages, the awards were no longer "theoretical" and judgment was entered, consistent with the court's order finding defendants jointly and severally liable. Nothing in the record indicates that the district court modified this order prior to entering judgment. *Cf. City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (noting that district courts may "reconsider, rescind, or modify an interlocutory order for cause" provided the "court has jurisdiction over the case" (emphasis omitted) (citation omitted)). Accordingly, we part ways with the dissent: the district court imposed joint and several liability in its order, contingent on the jury's finding of damages, and this order was "draw[n] in question" on appeal by the final judgment, *see Litchfield*, 736 F.2d at 1355.

against Manna, ABN, Top Fashion, 618 Main, and Pride & Joys are at issue on appeal.[6]

Appellants contend first that the district court adopted an erroneous view of joint and several liability. Rather than focusing, as the district court did, on whether individual defendants contributed to one another's tortious acts, Appellants argue that joint and several liability attaches when two or more defendants contribute to the harm the plaintiff suffers, even if they do so independently.[7] Under this approach, because all defendants contributed to Desire's injuries (that is, the "loss of compensation resulting from the infringement"), all are jointly and severally liable with one another according to Appellants. And because all defendants are (thus) jointly and severally liable, the Copyright Act permits only one award of statutory damages.

In the alternative, Appellants assert that, even if the district court correctly formulated joint and several liability, it was error to hold that the Copyright Act permits multiple awards of statutory damages when joint and several liability is not complete. We disagree with Appellants' argument on joint and several liability, but agree with their interpretation of the Copyright Act.

---

[6] Under the district court's allocation, Manna could be liable for the entire $480,000, Top Fashion for $150,000, ABN for $150,000, Pride & Joys for $30,000, and 618 Main for $10,000 (though, of course, Desire could not collect more than $480,000).

[7] As discussed above, Pride & Joys and 618 Main, in the same distribution chain, were jointly and severally liable with each other for $10,000, though neither was, for example, jointly and severally liable with Top Fashion, which was in a different distribution chain.

### 1. The district court correctly apportioned joint and several liability among the defendants.

The district court stated, "where an upstream defendant causes, whether directly or indirectly, a downstream defendant's infringement, the upstream defendant is a joint tortfeasor in, and therefore jointly and severally liable for, the plaintiff's harm caused by the downstream defendant's conduct." The district court also concluded that "where a downstream infringer's conduct is not the legal cause of the upstream defendant's infringement, the downstream infringer will not be responsible, jointly and severally, for the upstream defendant's wrongdoing." The district court's conclusions were correct.

"If the independent tortious conduct of two or more persons is a legal cause of an indivisible injury," joint and several liability may apply. Restatement (Third) of Torts: Apportionment Liab. § 17 (2000). "The requirement is only that the independent tortious acts 'concur' to cause an injury that is not divisible based on the causal contribution of the tortfeasors." *Id*. § A18 cmt. b. A divisible injury is one for which "[d]amages can be divided by causation." *Id*. § 26(b). To determine whether an injury is divisible, the factfinder must determine whether "the evidence provides a reasonable basis" to determine "that any legally culpable conduct of a party . . . was a legal cause of less than the entire damages for which the plaintiff seeks recovery" and "the amount of damages separately caused by that conduct." *Id*. "When two or more persons have joined in or contributed to a single infringement of a single copyright, each is jointly and severally liable; [and in such] circumstances, in a single infringement action . . . ." Nimmer § 14.04[E][2][d][i] (footnote omitted); *see, e.g.*, *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 973 (N.D. Cal. 2015).

Appellants argue that all defendants are jointly and severally liable for all infringements in the action because all the downstream infringers contributed to Desire's injuries in the form of the compensation Desire otherwise would have recouped from the use of its copyrighted design. Thus, Appellants contend that Desire suffered one indivisible injury for all the infringements flowing from Manna's source infringement, and that each defendant is jointly and severally liable for all infringements, regardless of whether an infringement occurred in a defendant's independent chain of distribution. We disagree.

Appellants' formulation of joint and several liability rests on a flawed understanding of the injury that stems from copyright infringement. In Appellants' view, each separate act of downstream infringement contributed to a single indivisible injury: the loss of compensation that Desire would have otherwise realized from the use of its copyrighted design. But we have recognized that the "rewards" that Congress intended to secure for the owner of a copyright "need not be limited to monetary rewards." *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1119 (9th Cir. 2000). Indeed, "[t]he copyright law does not require a copyright owner to charge a fee for the use of his works . . . . It is not the role of the courts to tell copyright holders the best way for them to exploit their copyrights . . . ." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 446 n.28 (1984).

Thus, we think that a view of "harm" or "injury" cabined only to Desire's loss of compensation is inconsistent with the Copyright Act. Rather, we think correct the district court's formulation of joint and several liability, which considers which defendants were responsible for which acts of infringement.

Desire's damages were divisible. Each upstream infringer was a "but for" cause of all downstream infringements in its chain of distribution, because absent the upstream infringer's distribution, no downstream infringer would have received any infringing item. Since the district court could determine which group of defendants legally caused each set of infringements, it divided the infringements into seven sets: (1) Manna's distribution to Pride & Joys, ABN, and Top Fashion (only Manna liable); (2) Top Fashion's sale to Ashley Stewart (Manna and Top Fashion jointly and severally liable); (3) Ashley Stewart's display and sale to consumers (Manna, Top Fashion, and Ashley Stewart jointly and severally liable); (4) ABN's sale to Burlington (Manna and ABN jointly and severally liable); (5) Burlington's display and sales to consumers (Manna, ABN, and Burlington jointly and severally liable); (6) Pride & Joys's sale to 618 Main (Manna and Pride & Joys jointly and severally liable); and (7) 618 Main's display and sales to consumers (Manna, Pride & Joys, and 618 Main jointly and severally liable).

Here, there was no evidence any downstream infringer was the "but for" cause of any upstream infringement in the *other* chains of distribution, or, in the case of the Retail Defendants, the "but for" cause of Manna's sale to any Manufacturer Defendant.[8] The district court properly found

---

[8] In a case like this, where one purchases infringing goods with knowledge of the goods' infringing character, a court could find the *purchaser* was a legal cause of the infringing act of distribution and contributorily liable for it. *See Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) ("One who, with knowledge of the infringing activity, induces . . . infringing conduct of another may be liable as a contributory copyright infringer." (alterations, internal quotation marks, and citation omitted)).

on summary judgment that while some defendants could be jointly and severally liable with some other defendants, not all defendants could be jointly and severally liable with all other defendants.[9]

This conclusion does not end our inquiry. Though we agree that the district court correctly determined joint and several liability, we hold the district court erred in awarding Desire multiple statutory damages awards totaling $480,000.

### 2. The Copyright Act permits only one award of statutory damages here.

The Copyright Act permits a copyright owner to elect an award of statutory damages in lieu of actual damages and profits. 17 U.S.C. § 504(c)(1) ("Section 504(c)(1)"). Section 504(c)(1) permits an owner to recover "an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally." *Id.* Section 504(c)(1) limits statutory damages awards to $150,000 for willful infringement and $30,000 for innocent infringement. *Id.* § 504(c)(1), (2). "The number of awards available under this provision depends not on the number of separate

---

That said, it does not appear that Desire ever pursued a theory of contributory infringement based on the *purchase* of articles bearing the infringing design. And even if Desire had done so, it would not alter our conclusion that joint and several liability is incomplete, as there is no evidence that any purchaser contributed to acts of infringement in other chains of distribution.

[9] For example, 618 Main was not a "but for" cause of Manna's distribution to Top Fashion. Thus, 618 Main was not jointly and severally liable with Top Fashion.

infringements, but rather on (1) the number of individual 'works' infringed and (2) the number of separate infringers." *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189–90 (9th Cir. 2016). There is no dispute that Appellants infringed one work, the Subject Design. The pertinent question, then, is whether the Act authorized the district court to issue multiple statutory damages awards where one infringer is jointly and severally liable with *all* other infringers, but the other infringers are not completely jointly and severally liable with one another. The answer is no.

### a. The text of Section 504(c)(1) limits Desire to one award of statutory damages.

As in all statutory interpretation, "our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). "[W]hen the statutory language is unambiguous, the plain meaning controls." *Afewerki v. Anaya Law Grp.*, 868 F.3d 771, 778 (9th Cir. 2017) (internal quotation marks and citation omitted). We conclude that the plain meaning of Section 504(c)(1) precludes multiple awards of statutory damages when, as here, there is only one work infringed by a group of defendants that have partial joint and several liability amongst themselves through a prime tortfeasor that is jointly and severally liable with every other defendant.

The Act clearly provides for *an award* of statutory damages for all infringements of a single work "for which *any* two or more infringers are liable jointly and severally." 17 U.S.C. § 504(c)(1) (emphasis added). This is such a case. Manna is jointly and severally liable with ABN, Top Fashion, Pride & Joys, and 618 Main. *See supra* Part I. And "an award" clearly means *one award*. Thus, as every district

court to consider this statute and this question has concluded (besides the district court in this case), "[f]or any two or more jointly and severally liable infringers, a plaintiff is entitled to one statutory damage award per work." *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 313, 316 (S.D.N.Y. 2011); *see also, e.g.*, *Clever Factory, Inc. v. Kingsbridge Int'l, Inc.*, No. 3:11-1187, 2014 WL 2711986, at *2 (M.D. Tenn. June 16, 2014); *Agence Fr. Presse v. Morel*, 934 F. Supp. 2d 584, 590 (S.D.N.Y. 2013); *McClatchey v. Associated Press*, No. 3:05-cv-145, 2007 WL 1630261, at *4 (W.D. Pa. June 4, 2007); *Bouchat v. Champion Prods., Inc.*, 327 F. Supp. 2d 537, 553 (D. Md. 2003), *aff'd on other grounds sub nom. Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315 (4th Cir. 2007).

Desire and the dissent argue, though, that *all* defendants must be jointly and severally liable for all the infringements for the statute to limit a plaintiff to a single statutory damages award. But not only is that interpretation contrary to the plain and unambiguous meaning of the statute, it would also run afoul of the canon of statutory interpretation that "courts should disfavor interpretations of statutes that render language superfluous." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992).

Nothing in the Act's text requires complete joint and several liability to limit the plaintiff to "an award." Requiring complete joint and several liability among all defendants "would render the word 'any' [in 'for which any two or more infringers are liable jointly and severally'] superfluous, or alternatively, would rewrite the statute to impose a single award *only* where '*all* infringers are liable jointly and severally.'" *McClatchey*, 2007 WL 1630261,

at *4 (first emphasis added).[10] Section 504(c)(1)'s use of the word "any" means that if all infringers in the action were jointly and severally liable with at least one common infringer (here Manna) all defendants should be treated as one unit. "The intent of this statute . . . appears to be to constrain the award of statutory damages to a single award

---

[10] The dissent's statutory analysis runs counter to its own interpretation of "any." *See dissent* at p. 50–51. We agree with the dissent (and the Supreme Court) that "the word 'any' has an *expansive* meaning, that is, one or some *indiscriminately of whatever kind*." *Dissent* at p. 50 (emphasis added) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). Thus, in *Gonzales*, the Supreme Court noted that the phrase "any other term of imprisonment" encompassed all terms of imprisonment, not only those in federal prison. *Gonzales*, 520 U.S. at 5. Similarly, our interpretation of "any" to include a group of defendants that have partial joint and several liability amongst themselves through a prime tortfeasor that is jointly and severally liable with every other defendant is the correct expansive meaning. It includes the most expansive type of joint and several liability (partial), rather than limiting the definition to *only* complete joint and several liability. Further, the dissent is incorrect when it notes that "it matters *which specific acts of infringement* each defendant is jointly and severally liable for," *dissent* at p. 51, because it reads out the word "all" that precedes "infringemts involved." The phrase "all infringements" signals to the court that it does not matter how many or which specific infringements each defendant is liable for in a single work—there will still be one award per work.

The error of this interpretation becomes clear when applied to individually liable infringers, *see Arista Records*, 784 F. Supp. 2d at 316 ("Congress intended for the Copyright Act *to treat jointly and severally liable infringers the same way that the statute treats individually liable infringers*."). Courts would now be similarly required to focus on which specific infringements each individual infringer is liable for to determine the number of awards. This would shift the focus away from individual liability for "all infringements involved in the action, with respect to any one work." 17 U.S.C. § 504(c)(1). Plaintiffs could recover an award for every specific act of infringement where there are multiple individually liable defendants—instead of one statutory award for each individually liable defendant "with respect to any *one work*." *Id.* (emphasis added).

per work, rather than allowing a multiplication of damages based on the number of infringements." *Agence Fr. Presse v. Morel*, 934 F. Supp. 2d 547, 580 (S.D.N.Y. 2013), *superseded in part by Agence Fr. Presse*, 934 F. Supp. 2d 584.

Though our inquiry as to the meaning of the statute both begins and ends with the text, we note that the statutory damages award is an *alternative* to an actual damages award, and the election is always at the option of the copyright owner. Other statutory schemes might also be logical. But it makes sense that Congress, rather than creating a statute that awarded a windfall, instead created a statute that allowed actual damages plus costs and attorneys' fees or (if actual damages are too small to afford a meaningful deterrent) a statutory damages award of up to $150,000 plus costs and attorneys' fees. When the defendants have infringed more than one work, a plaintiff may seek additional awards of statutory damages. Likewise, additional groups of jointly and severally liable defendants may be subject to separate awards of statutory damages, but only if no defendant in a group (as to which a separate award is sought) is jointly and severally liable with a member of another group.[11]

---

[11] Here, for example, if Manna were not involved at all and Pride & Joys, ABN, and Top Fashion had independently infringed, there could be three awards, even though Pride & Joys, ABN, and Top Fashion were each jointly and severally liable with others in their separate distribution chains. *See Agence Fr. Presse*, 934 F. Supp. 2d at 579 ("[I]f a group ('two or more') of infringers have engaged in any number of infringements for which all are jointly and severally liable, the statute again mandates a single statutory award of damages per work infringed."). This view treats groups of jointly and severally liable defendants that are not jointly and severally liable with other groups identically to individually liable infringers. *See Arista Records*, 784 F.

Desire posits that our decision in *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.* (*Columbia I*), 106 F.3d 284 (9th Cir. 1997), *rev'd on other grounds sub nom. Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998), dictates that we hold that Section 504(c)(1) permits separate statutory damages awards in situations like this. We disagree.

In *Columbia I*, we affirmed an $8.8 million judgment—comprised of 440 statutory damages awards and based on 440 separately infringed works—against a single individual. *See Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.* (*Columbia II*), 259 F.3d 1186, 1190 (9th Cir. 2001).**[12]** The district court initially determined that defendant Feltner, the owner of a company that owned three television stations, was vicariously liable for these television stations' displaying Columbia's copyrighted television episodes.**[13]** *Columbia I*, 106 F.3d at 288. Before the district

---

Supp. 2d at 316 ("[T]he Court is confident that Congress intended for the Copyright Act to treat jointly and severally liable infringers the same way that the statute treats individually liable infringers." (emphasis omitted)).

**[12]** The Supreme Court reversed our decision in *Columbia I* because it found the Seventh Amendment guaranteed Feltner a jury trial on the total amount of statutory damages. *Columbia II*, 259 F.3d at 1190–91. On remand the jury awarded Columbia $31.68 million, and Feltner again appealed to this court. *Id.* at 1191.

**[13]** Plaintiff Columbia separately licensed the three stations to broadcast episodes of television shows as to which it owned the copyrights. *Columbia I*, 106 F.3d at 288. When the stations became delinquent in paying royalties, Columbia terminated (or attempted to terminate) the licenses, but the stations continued broadcasting the television shows and Columbia sued. *Id.* "During the course of the litigation, Columbia dismissed all claims against all defendants with the

court (and on appeal), Feltner argued unsuccessfully that the number of awards should be reduced because the stations were all owned under a common owner. *Id.* at 294 n.7. Specifically, he argued that when calculating damages, multiple television stations displaying identical television episodes should count as a single work per episode. The district court disagreed, concluding that separate displays of identical television episodes[14] by different stations *qualified as separate works*. *Columbia II*, 259 F.3d at 1190 (explaining that "the district court determined that Feltner infringed 440 separate 'works'"). We "generally affirmed the district court's rulings" in *Columbia I*, and when the case returned to us on remand from the Supreme Court, we remanded back to the district court "on the sole question of the amount of money to award Columbia." *Id.* at 1190–91. After a jury trial on the amount of damages, the jury awarded Columbia $31.68 million, and we again affirmed.[15] *Id.* at 1189. Ultimately, Feltner, the owner and only defendant on trial, was responsible for 440 separate awards based on 440 *works*. We emphasized this in *Columbia II*, noting that "the Copyright Act . . . permits an award of statutory damages

exception of the copyright claims against Feltner." *Columbia II*, 259 F.3d at 1190. The district court then found Feltner "vicariously and contributorily liable for the copyright infringement committed by the defendant stations" for the separate copyright infringements. *Id.* The district court held Feltner was liable for 664 separate infringements of Columbia's copyrighted works.

[14] There were about 149 unique episodes of one television show that were shown by two stations. It does not appear from the record that the infringing episodes shown by the third television station overlapped with the other two stations.

[15] The jury awarded approximately "$72,000 for each of the 440 works infringed, which [was] within the statutory damages range for willful infringement." *Columbia II*, 259 F.3d at 1191.

'for all infringements involved in the action, with respect to any one *work*.'" *Id.* at 1190 (quoting 17 U.S.C. § 504(a)(1)). There, Feltner once again asserted that because two of the stations were joint tortfeasors, an episode should count as only "one work" when each station separately aired the same episode. *Id.* at 1194. We rejected this view because "*his* connection with each of the stations . . . simply ma[de] Feltner a joint tortfeasor with each station—it [did] not make each station a joint tortfeasor with respect to the other." *Id.* (citing *Columbia I*, 106 F.3d at 294). Thus, what we rejected in *Columbia II* was an argument that separate acts of infringement of the same television episode by different televisions stations result in only one infringed work simply because there was a common owner of the stations.

But no one here has argued that the defendants' separate infringing acts of the pattern design resulted in *multiple* infringed works. As the dissent notes, "it was undisputed that there was only one 'work' at issue." *Dissent*, at p. 41. Nor is Manna an owner of the downstream infringers whose liability stemmed only from its corporate relationship with those infringers. Rather, unlike Feltner, Manna is a prime tortfeasor in all three distribution chains. The underlying question here—how does the Copyright Act treat multiple acts of separate infringements of *one work*—was never directly considered in *Columbia I* or *Columbia II* because the district court ruled there were 440 statutory awards from

664 separate infringements of 440 separate works.[16] These cases thus shed little light on the issue here.[17]

We also disagree with Desire that *Friedman*, and in particular its discussion of a hypothetical posed in Nimmer (the "Nimmer Hypothetical"), the leading treatise on copyright law, supports multiple statutory damages awards here. In *Friedman*, we expanded on *Columbia I*, but stopped

---

[16] The district court's ruling of 440 infringed works affirmed in *Columbia I* and *II* also impliedly supports our read of the statute. While Feltner was initially found liable for 664 separate acts of infringement, the district court then held after a bench trial that Columbia was only entitled to 440 statutory awards, or one award per work infringed. *See Columbia I*, 106 F.3d at 296 (finding "the district court's award of $20,000 per *work* infringed [was] well within the statutory limits" (emphasis added)). On remand, the jury also only considered Feltner's liability from 440 works and awarded a total amount that was "equal to a per work infringed award that [was] well within the statutory range for willful infringement." *Columbia II*, 259 F.3d at 1195. Here, however, Manna is liable for $480,000, well outside the $150,000 "statutory range for willful infringement" per work infringed. *Id.* This further cuts against the dissent's view that multiple awards are available.

[17] Desire and the dissent, *see dissent* at p. 45, both argue that we are constrained by footnote 7 in *Columbia I*, in which we wrote that "[b]ecause the stations were not jointly and severally liable with each other, Feltner's liability vis-a-vis the stations merely renders him jointly and severally liable for each station's infringements—it does not convert the stations' separate infringements into one." 106 F.3d at 294 n.7. But that footnote "neither directly addressed the statutory text nor engaged in detailed analysis of the issue." *Agence Fr. Presse*, 934 F. Supp. 2d at 582. *Cf. Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam) ("[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it *after reasoned consideration* in a published opinion, that ruling becomes the law of the circuit . . . ." (emphasis added) (citation omitted)). And the district court here did not find that multiple infringements of the Subject Design translated into separate infringements of *multiple* works.

a step short of addressing the issue presented in this appeal. We determined that one statutory damages award was appropriate when the defendant had sold infringing products to 104 retailers the plaintiff had not joined as defendants. We reasoned that the "holding in *Columbia* [*I*] was explicitly premised on the fact that each of the downstream infringers for whom the plaintiff received a separate damages award was a *defendant* in the case." 833 F.3d at 1191. Thus,

> Section 504(c)(1)'s provision of separate statutory damage awards for the infringement of each work "for which any two or more infringers are liable jointly and severally" applies only to parties who have been determined jointly and severally liable in the course of the liability determinations in the case for the infringements adjudicated in the action. A plaintiff seeking separate damages awards on the basis of downstream infringement must join the alleged downstream infringers in the action and prove their liability for infringement.

*Id.* at 1192. In *Friedman*, we avoided answering the question of how Section 504(c)(1) applies when the plaintiff joins both the common primary source infringer and the downstream infringers as defendants, when the downstream infringers are not jointly and severally liable with each other.[18] Here, we conclude that in those circumstances, only one award of statutory damages is permissible.

---

[18] Desire incorrectly interprets *Friedman* to stand for the proposition "that if a downstream infringer is added to an action and its infringement is proven, then a separate award of statutory damages is appropriate."

Nor do we find persuasive Desire's reliance on the Nimmer Hypothetical, in which *D* distributed the plaintiff's copyrighted motion picture to *A*, *B*, and *C*, who in turn publicly performed that motion picture. Nimmer § 14.04[E][2][d]. As stated in Nimmer, "[a]lthough *A*, *B*, and *C* are not jointly or severally liable each with the other, *D* will be jointly and severally liable with each of the others." *Id.* § 14.04[E][2][d][i]. In those circumstances, according to Nimmer, "three sets of statutory damages may be awarded, as to each of which *D* will be jointly liable for at least the minimum of $750." *Id.*

Although we acknowledge that the Nimmer Hypothetical supports Desire's position, we decline to adopt its conclusions. Nimmer offers no basis, except for a citation to *Columbia II*, for the proposition that multiple statutory damages awards are appropriate. But we have already explained that *Columbia II* does not determine the outcome of this case. And Nimmer never discusses how multiple statutory damages awards in the circumstances here adhere to the text of the statute. As several district courts have noted, "subsequent decisions have rejected outright . . . the Nimmer hypothetical, finding [it] inapplicable to situations involving large numbers of infringements." *Arista Records*, 784 F. Supp. 2d at 318; *see also Arista Records*, 784 F. Supp. 2d at 320 (discussing the Nimmer Hypothetical and concluding that "allowing Plaintiffs to recover multiple awards per work based on the number of direct infringers is untenable"); *Bouchat*, 327 F. Supp. 2d at 553 ("While it may well be possible to distinguish the Nimmer example from the situation present[,] . . . [i]t suffices to state that the Court

---

*Friedman* merely held that joinder of an infringer was a *prerequisite* to seeking a separate statutory damages award—not that it was sufficient on its own.

would not follow [Nimmer's] conclusion to reward Bouchat with more than 350 separate statutory damage awards."). We agree with those district court decisions.

### b. Multiple awards of statutory damages here would produce an absurd result not intended by Congress.

The result we reach here is the only one consistent with the plain text of the statute, and we need go no further. That being said, the interpretation of Section 504(c)(1) that Desire and the dissent urge, and the district court adopted, produces an absurd result. *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 200 (1993) (invoking "the common mandate of statutory construction to avoid absurd results"). Specifically, requiring complete joint and several liability among all defendants in order to limit the plaintiff to one award for one work would lead to disparate treatment of infringers depending on the relationship between downstream infringers. *Cf. Friedman*, 833 F.3d at 1191 (rejecting the mass-marketing exception in part because "such an exception would mean reading the statute in two different ways depending on how many down-the-line violations there were").

If Manna, ABN, Top Fashion, and Pride & Joys had acted in concert to sell infringing materials to downstream retailers (and thus were each jointly and severally liable), each would be shielded from multiple statutory damages awards by operation of the statute's plain language.[19] Yet because Manna acted separately with each downstream

---

[19] *See Bon-Ton Dep't Stores*, 506 F.3d at 329 ("Because NFLP and the licensee were at fault together for the licensee's violation, they are liable jointly and severally for any damages the violation caused.").

infringer, Manna and each of the next-level downstream infringers would be subject to multiple statutory damages awards, under the dissent's interpretation of the statute. It is illogical that an infringer should face greater liability for participating in an infringement activity in a *less* culpable manner.[20]

The district court's interpretation would also lead to potentially astronomical statutory damages awards contrary to the purpose of Section 504(c)(1).[21] *Friedman* recognized that Section 504(c)(1) should not be read to "lead[] to extremely unlikely results, with direct infringers becoming liable for astronomical sums in cases with large numbers of downstream infringers unrelated to each other."  833 F.3d at 1192; *see also id.* (noting that "[t]his risk has become particularly acute in the internet era, where rapid peer-to-peer file sharing has enabled mass piracy of books, films, music, and other copyrighted materials"). Adopting the district court's interpretation "could lead to awards of statutory damages that are massively disproportionate when compared to the actual harm caused by the infringing defendants." *Agence Fr. Presse*, 934 F. Supp. 2d at 580; *see*

---

[20] Under the rule proposed by Desire, if all defendants here conspired, Manna would be liable only once, but because downstream infringers did not act together, Manna is to face multiple awards of statutory damages. Logic would suggest instead that the broader the conspiracy, the more extensive the co-conspirator liability, not the reverse. But again, regardless of the comparative logic of the two approaches, the statute Congress wrote dictates the result here.

[21] The dissent misses the point here, *see dissent* at p. 48–49. This is not a "mass-marketing" concern rejected by *Friedman*, *dissent* at p. 48–49, nor have we substituted our "own policy preferences for those of Congress," *dissent* at p. 55–56. We are motivated by the *very same* concern that drove our court's holding in *Friedman. See* 833 F.3d at 1192.

*also Arista Records*, 784 F. Supp. 2d at 317 ("The absurdity of this result is one of the factors that has motivated other courts to reject [the district court's] damages theory."); *McClatchey*, 2007 WL 1630261 at \*4 (finding persuasive the *Bouchat* court's conclusion that the result would be "absurd" (quoting *Bouchat*, 327 F. Supp. 2d at 553)).

As awarded by the district court, Manna is jointly and severally liable for awards totaling $480,000. Manna asserted in its trial briefing that its profits from infringing sales did not exceed $5,000 (though the district court noted that the exact amounts of Manna's profits were not in evidence). Assuming for argument's sake that Manna's representation is accurate, the district court's order makes Manna liable for nearly one hundred times its profits. And while we have here "only" three chains of infringement resulting in five or seven awards of statutory damages, the problem of disproportionate awards would increase exponentially in a case like *Friedman*, where a plaintiff could recover thousands (or more) in statutory damages awards where infringing content is widely distributed over the internet. *See Friedman*, 833 F.3d at 1192 ("As the district court rightly recognized, the broad reading of *Columbia* [*I*] Friedman urges leads to extremely unlikely results, with direct infringers becoming liable for astronomical sums in cases with large numbers of downstream infringers unrelated to each other.").

### c. Permitting multiple awards of statutory damages here would frustrate the purposes of the Copyright Act.

Finally, we believe the district court's approach to be contrary to the purposes of the Act. "Statutory damages are available in order to effectuate two purposes underlying the

remedial provisions of the Copyright Act: to provide adequate compensation to the copyright holder and to deter infringement." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1554 (9th Cir. 1989). "Statutory damages are intended as a substitute for profits or actual damage," *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 520 (9th Cir. 1985), and should not provide copyright owners a windfall. Congress specifically limited the amount of statutory damages available per award and limited a plaintiff to a single award no matter how many infringements an individual defendant or group of jointly and severally liable defendants committed.

We are mindful of the fact that under the approach we adopt today, a plaintiff might achieve the result Desire seeks by suing separate infringers in separate actions, arguably frustrating the purposes of the Act as well. We still think our approach is preferable to the alternative, for several reasons.

First, we think that even if this is a risk, it is outweighed by the vastly disproportionate damages awards that would flow from a contrary interpretation of Section 504(c)(1). Second, the risk is not unique to our interpretation. Even under the approach advocated by Desire and adopted by the district court, only one statutory damages award is available for each group of completely jointly and severally liable defendants. A plaintiff could still sue each defendant separately to increase its potential recovery, regardless that the separately sued defendants participated in the same course of infringing conduct. *See Friedman*, 833 F.3d at 1191 ("Any downstream infringements cannot be 'involved in the action' unless the alleged infringers responsible for those infringements were joined as defendants in the case, and the particular alleged infringements involving them adjudicated."). Thus, the

presence of infringers not joined in the case will not defeat a plaintiff's ability to increase his recovery by engaging in separate lawsuits.

Third, if an enterprising plaintiff tried to sue jointly and severally liable defendants in different actions to evade the single-statutory-damages-award limit, those defendants could argue to the jury that their liability for statutory damages should be materially lessened. *See Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (observing that a statutory damages award may account for the infringer's "expenses saved, and profits earned," "the revenue lost by the copyright holder," and "the deterrent effect on the infringer and third parties," among other factors); *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009) ("If statutory damages are elected, the jury has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima. The jury is guided by what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like . . . ." (internal quotation marks, citations, and alterations omitted)).

And fourth, a court could consolidate such multiple actions (if brought in the same district) in a single action under Federal Rule of Civil Procedure 42(a).[22] And if the claims are brought in different districts, a defendant could seek transfer under 28 U.S.C. § 1404(a), which permits a

---

[22] The dissent, citing no case law or treatise, asserts that this would be a violation of the Rules Enabling Act and wonders how the district courts will "work around [our] mess." *Dissent* at p. 55. But the out-of-circuit district courts that have considered the issue (remember no other circuit has adopted the dissent's statutory interpretation of Section 504) have managed these past thirteen years.

district court to transfer venue in a civil action "[f]or the convenience of parties and witnesses, in the interest of justice." A plaintiff attempting to avoid consolidation or transfer by suing individual defendants seriatim would likely run up against the three-year statute of limitations for copyright infringement claims. *See* 17 U.S.C. § 507(b).**[23]**

But even if we are wrong in our appraisal of the multiple-lawsuit risk, as our approach is the only one consistent with the text of Section 504(c)(1), it is not our job to reweigh the merits of the several possible approaches. "Whatever merits these . . . policy arguments may have, it is not the province of this [c]ourt to rewrite the statute to accommodate them." *Artuz v. Bennett*, 531 U.S. 4, 10 (2000).

Desire also contends that multiple statutory damages awards may be necessary to realize the goals of the Copyright Act by fully compensating a plaintiff and deterring all infringers in an action. But this argument is unavailing for three reasons: First, Section 504(c)(1) already provides for the factfinder to consider the number of direct infringers and the number of infringements of the copyrighted work when determining *the amount* of statutory damages. *See Dream Games of Ariz.*, 561 F.3d at 992. Second, it is the copyright holder's choice to pursue statutory damages rather than actual damages and profits under 17 U.S.C. § 504(b). If statutory damages are inadequate to fully compensate the injured party, it may elect actual

---

**[23]** According to the dissent "[i]t will instead become commonplace for plaintiffs to bring a separate lawsuit against each defendant" to maximize the number of statutory damages awards. *Dissent* at p. 53. But if this were the case it would have *already* happened in every circuit in which district courts have considered the issue we face, especially because no other circuit (that we are aware of) requires plaintiffs to join downstream defendants in the action.

damages instead. And third, and most important, if Desire's position is superior from a public policy perspective, it is for Congress alone to amend the statute. *See Artuz*, 531 U.S. at 10.

## III.    CONCLUSION

We affirm the district court's grant of summary judgment as to the ownership and scope of copyright protection, as well as the district court's exclusion of Young's testimony. We reverse the district court's grant of summary judgment as to the number of statutory damages awards available, vacate the judgment awarding Desire multiple awards of statutory damages, and remand for further proceedings consistent with this opinion.

Each party shall bear its own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, VACATED, AND REMANDED.**

WARDLAW, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from the majority's conclusion that Desire is entitled to only one award of statutory damages against the five defendants whom the jury concluded separately infringed varying exclusive rights in copyright.[1] The majority ranges far afield to reach a conclusion that is not only contrary to controlling Ninth Circuit precedent on

---

[1] I concur with the majority's conclusions in Parts II.B–C of the majority opinion that Desire owned a valid copyright in the Subject Design and that the design was entitled to broad copyright protection.

statutory damages in copyright but also creates perverse incentives for copyright litigation.  After today's decision, a copyright plaintiff can seek only one award of statutory damages when it joins in a single lawsuit members of independently infringing distribution chains that trace back to a common infringing source.  But if the plaintiff brings separate lawsuits against each infringer, or if it simply cuts the common source defendant at the top of the chain out of the case, a separate statutory damages award is available against each defendant.

This rule makes little sense.  And worse still, it was entirely unnecessary for the majority to reach the question because none of the five separate, independently liable, copyright infringers in this case was actually found jointly and severally liable with another.  Thus, the majority creates law with enormous implications for copyright owners litigating to protect their rights, in a case where the critical issue—whether only one award of statutory damages is allowable where one infringer is found jointly and severally liable for the downstream infringers' conduct, but the downstream infringers are not jointly and severally liable with each other—is not even before us.

## I.   No Defendant Was Held Jointly and Severally Liable for the Copyright Infringement of Another Defendant.

The judgment entered on September 29, 2017, following the jury verdict, does not hold any party jointly and severally liable for any other party's statutory damages.  The district court expressly rejected a "[proposed] amended judgment" that included language finding joint and several liability.  Nor did the special verdict form address joint and several liability or secondary infringement; nor were those questions the subject of a single jury instruction.

The issue of multiple awards of statutory damages arises from the district court's September 22, 2017, pre-trial "Order re Plaintiff's Entitlement to Separate Statutory Damages Awards" (the Statutory Damages Order).  In that order, the district court applied well-established principles of contributory liability and our decisions in *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180 (9th Cir. 2016), and *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284 (9th Cir. 1997), *rev'd on other grounds sub nom. Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998), to conclude that because this is a case "where separate infringements for which two or more defendants are not jointly liable are joined in the same action, separate awards of statutory damages would be appropriate."  *See Columbia Pictures*, 106 F.3d at 294 (quoting H.R. Rep. No. 94-1476, at 162 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5778).  But while the order reflects how the district court *expected* to apply joint and several liability after trial, the court never actually held that Manna, or any of the other defendants, is jointly and severally liable for payment of the statutory damages awarded against another defendant.

Under 17 U.S.C. § 504(c)(1), a copyright owner may elect to recover

> an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

In the event of willful infringement, "the court in its discretion may increase the award of statutory damages to a sum of not more than \$150,000." *Id.* § 504(c)(2). As we have previously explained, the number of statutory damages awards available under § 504(c)(1) "depends not on the number of separate infringements, but rather on (1) the number of individual 'works' infringed and (2) the number of separate infringers." *Friedman*, 833 F.3d at 1189–90.

Here, it was undisputed that there was only one "work" at issue: Desire's copyrighted CC3460 floral print textile design. It was also undisputed at the time of the Statutory Damages Order that there were seven defendants who were each alleged to have directly and independently infringed the copyrighted work.[2] At the top of the distribution chain sat Manna, a fabric supplier that intentionally reproduced the copyrighted design and distributed the infringing product to three women's clothing manufacturers—ABN, Pride & Joys, and Top Fashion—who occupied the middle rung of the chain. The manufacturers, in turn, created garments out of the infringing fabric and sold them to the retailer defendants—Ashley Stewart, Burlington, and 618 Main— who then distributed and publicly displayed the infringing garments.

---

[2] An infringer is "[a]nyone who violates any of the exclusive rights of the copyright owner" granted by the Copyright Act. 17 U.S.C. § 501(a); *see A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (noting that direct copyright infringement occurs when "the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106"). Those exclusive rights include the reproduction, preparation of derivative works, distribution, public performance, and public display of the copyrighted material. 17 U.S.C. § 106.

By the time of trial, Ashley Stewart and Burlington had settled and were no longer part of the case. For the remaining five defendants, the jury adjudicated liability and concluded that Manna, ABN, and Top Fashion were willful infringers, and that Pride & Joys and 618 Main had innocently infringed. It awarded the maximum $150,000 in statutory damages against each of the willful infringers, $20,000 against Pride & Joys, and $10,000 against 618 Main.

The jury was not asked to find any party jointly and severally liable. That is because the district court, in the pre-trial Statutory Damages Order, had decided that it would determine joint and several liability itself, depending on the jury's verdict. The pretrial order expressly noted that it was delineating the statutory damages that were "theoretically available" depending on what was proved at trial, and that after the jury returned its verdict, "the Court w[ould] then apply joint and several liability as discussed [in the Statutory Damages Order] to allocate damages in accordance with section 504(c)(1)."

But the district court never did that allocation. Indeed, Desire, the party that would benefit from a finding of joint and several liability, did not seek joint and several liability against the defendants. The majority treats the Statutory Damages Order as though it applied to the jury verdict without any further action by the district court. Majority Op. at 10. But it is clear from the face of the Statutory Damages Order that it was not self-executing. As the order explains, it set forth the framework that "the Court w[ould] *then* apply" after the jury's determination of liability. (emphasis added). In other words, the order expressly contemplated that the district court would take some affirmative post-verdict action to apply joint and several liability principles

to the defendants in this case, if warranted by the trial evidence. It is undisputed that the district court never did so.

Moreover, we review final judgments, not opinions or pre-trial orders. *See Jennings v. Stephens*, 574 U.S. 271, 277 (2015) ("This Court, like all federal appellate courts, does not review lower courts' opinions, but their *judgments*."). The judgment in this case reads as follows:

IT IS ORDERED AND ADJUDGED that
Plaintiff Desire, LLC recover of Defendants:

| | |
|---|---|
| Manna Textiles, Inc. | $150,000 |
| A.B.N., Inc. | $150,000 |
| Top Fashion of N.Y., Inc. | $150,000 |
| Pride & Joys, Inc. | $20,000 |
| 618 Main Clothing Corp. | $10,000 |

On its face, the judgment limits Desire to collecting only the specified amounts from each defendant. *Nothing* in the judgment holds any defendant jointly and severally liable for another's damages.

The majority contends that the pre-trial statutory damages order was "draw[n] in" to the judgment. Majority Op. at 15 n.5. Of course, the majority is correct that pre-trial orders generally merge into a final judgment. *See Am. Ironworkers & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 897 (9th Cir. 2001). But when a judgment is inconsistent with a pre-trial order, the judgment must

control.   It is the judgment, not the pre-trial order, that
ultimately "define[s] the rights and liabilities of the parties."
*Jennings*, 574 U.S. at 277 ("[A] rule that . . . makes the
opinion part of the judgment, is peculiar . . . .").   An order
issued before trial therefore cannot modify a judgment
entered *after* trial.

For all its mighty strivings, the majority cannot make the
judgment say something it does not.   Because we cannot
make a joint and several liability finding ourselves on
appeal, the proper course would be to remand for the district
court to either correct its judgment—if the omission of joint
and several liability was a mere oversight, *see* Fed. R. Civ.
P. 60(a)—or for the district court to adjudicate joint and
several liability in the first instance and enter judgment
accordingly.   Instead, the majority incorrectly interprets
§ 504(c)(1), and then applies that misinterpretation to its
hypothetical finding of joint and several liability.

## II. The Majority's Interpretation of § 504(c)(1) Runs Directly Contrary to Controlling Ninth Circuit Precedent.

The majority's analysis should have started and stopped
with our precedential decisions in *Columbia Pictures* and
*Friedman*.

In *Columbia Pictures*, we held that "where separate
infringements for which two or more defendants are not
jointly liable are joined in the same action, separate awards
of statutory damages would be appropriate."  106 F.3d at 294
(quoting H.R. Rep. No. 94-1476, at 162 (1976), *reprinted in*
1976 U.S.C.C.A.N. 5659, 5778).   There, after a bench trial
on statutory damages, the district court found that the
infringement of Columbia Pictures Television's copyright in
certain television series by three television stations joined in

the action, along with their owner, as defendants, were "separate acts of infringement" subject to separate awards of statutory damages. *Id.* We affirmed, because the three stations broadcasting the infringing television episodes were not "joint tortfeasors." *Id.*

We also upheld the district court's conclusion that the station owner defendant was vicariously and contributorily liable for the three television stations' separate displays of the copyrighted television shows and was therefore jointly and severally liable with each station. *Id.* at 288, 294 & n.7; *see also Friedman*, 833 F.3d at 1190 (explaining the holding of *Columbia Pictures*). We rejected the defendant owner's argument that only one and not multiple sets of statutory damages was appropriate, reasoning that "[b]ecause the stations were not jointly and severally liable with each other, [the owner's] liability vis-a-vis the stations merely renders him jointly and severally liable for each station's infringements—it does not convert the stations' separate infringements into one."**[3]** *Columbia Pictures*, 106 F.3d at 294 n.7.

---

**[3]** The majority all but concedes that this part of the *Columbia Pictures* opinion is in direct conflict with its conclusion that only one statutory damages award is available in this case. It attempts to brush past the passage as dicta, quoting an out-of-circuit district court's characterization of it as "neither directly address[ing] the statutory text nor engag[ing] in detailed analysis of the issue." Majority Op. at 29 n.17 (quoting *Agence France Presse v. Morel*, 934 F. Supp. 2d 547, 582 (S.D.N.Y. 2013)). But Footnote 7 is clearly not dicta—it provided the entire reasoning for rejecting one of the defendant's arguments. *See United States v. Rivera-Corona*, 618 F.3d 976, 986 (9th Cir. 2010) (Fisher, J., concurring) ("A proposition necessary to the holding cannot be dicta."). While the out-of-circuit district court in *Agence France Presse* may have been free to decline to follow Footnote 7, the panel

As in *Columbia Pictures*, if the district court here had found Manna jointly and severally liable for all the downstream separate infringements, that would not convert the subsequent separate infringements into one because the downstream defendants are not joint tortfeasors.  It does not matter that Manna is also liable for its own distinct, separate violation of Desire's copyright because it copied the fabric design and distributed those copies.

Five years ago, in *Friedman*, we reaffirmed the holding in *Columbia Pictures*, reiterating that the three statutory damages awards in that case were appropriate because the three downstream television stations there "were each jointly and severally liable with the [station owner] defendant but *not* with each other."  833 F.3d at 1190.  In *Friedman*, defendant Live Nation had distributed goods bearing copyrighted images to 104 different retailers, who then also infringed the copyrighted works.  *Id.* at 1183–84.  The district court rejected the plaintiff's effort to seek 104 separate statutory damages awards, reasoning that doing so would "lead to an absurd result."  *Id.* at 1191.  While it recognized that *Columbia Pictures* was "binding precedent" holding that separate awards were appropriate in this circumstance, the district court nonetheless concluded that *Columbia Pictures* should not be applied to a "mass-marketing campaign" like the one there.  *Id.*

We squarely rejected the district court's rationale for disallowing separate statutory damages awards.  We held that *Columbia Pictures* "is the law of this circuit, and

---

majority here is bound by it.  *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

nothing in the opinion—or in the text of the statute itself—admits of a 'mass-marketing' exception."**[4]** *Id.*

We also noted with approval that the facts of *Columbia Pictures* were "analogous" to the hypothetical discussed by Professor Nimmer in his leading treatise on copyright law—a hypothetical the majority finds unpersuasive. *Id.* at 1190–91. As Professor Nimmer explains, "[i]f each defendant is liable for only one of the several infringements that are the subject of suit, then each defendant will be liable for a separate set of statutory damages (each with its own minimum)." 4 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 14.04[E][2][d][i] (2020) (hereinafter Nimmer).

The Nimmer Hypothetical is predicated on a single complaint that alleges infringement of the public performance right in a motion picture against three independent operators of movie theaters—A, B, and C—who unlawfully publicly performed the plaintiff's movie. *Id.* Nimmer states that "if A, B, and C have no relationship with one another, there is no joint or several liability as between them, so that each is liable for at least a minimum $750 statutory damage award." *Id.* Adding to this hypothetical, Nimmer addresses a slightly different scenario where "D, without authority, distributed plaintiff's motion picture to A, B, and C," and concludes that "[a]lthough A, B, and C are not jointly and severally liable each with the other, D will be jointly and severally liable with each of the others." *Id.* Thus, as here, three sets of statutory damages are awardable:

---

**[4]** We ultimately held in *Friedman* that a plaintiff can seek separate statutory damages awards only if it joins the alleged downstream infringers in the action and proves their liability. *Friedman*, 833 F.3d at 1192. That holding is not at issue here because Desire joined each of the downstream infringers as defendants in this case.

one against A+D, jointly and severally; one against B+D, jointly and severally; and one against C+D, jointly and severally.[5]  *Id.*

To summarize, our court in *Columbia Pictures* and *Friedman* endorsed the Nimmer Hypothetical, rejected the idea of a "mass-marketing exception," and adopted a simple rule: separate statutory damages awards are appropriate when separate downstream infringers are not jointly and severally liable with each other, even though an upstream defendant might be jointly and severally liable with each of them.  *Friedman*, 833 F.3d at 1090–91; *Columbia Pictures*, 106 F.3d at 294.  Under this rule, the outcome of this case is straightforward.   Because the downstream infringers— ABN, Pride & Joys, Top Fashion, and 618 Main—separately infringed and are not jointly and severally liable with each other, Desire is entitled to separate statutory damages awards.

Instead of following *Columbia Pictures* and *Friedman*, the majority swerves off in the opposite direction.  While acknowledging that "the Nimmer Hypothetical supports Desire's position," the majority simply "decline[s] to adopt its conclusions."  Majority Op. at 31.  But the Nimmer Hypothetical cannot be so blithely cast aside.  We previously described it as "analogous" to *Columbia Pictures*, a case the majority is *not* free to ignore.  *Friedman*, 833 F.3d at 1190.

Instead, the majority writes that allowing separate awards would "lead to potentially astronomical statutory

---

[5] Unlike here, in the Nimmer Hypothetical, D is not separately alleged to have committed an independent act of copyright infringement, so D's participation in the movie distribution profits does "not create a fourth set of statutory damages."  Nimmer § 14.04[E][2][d][i].

damages awards contrary to the purpose of Section 504(c)(1)." Majority Op. at 33. If this refrain sounds familiar, that is because it is the same "mass-marketing" concern we rejected in *Friedman*. *Friedman*, 833 F.3d at 1191. The majority grounds its concerns about "astronomical" damages on the *exact same* out-of-circuit authority that we *faulted* the district court for relying on in *Friedman*. *Compare* Majority Op. at 34–34 ("agree[ing]" with *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 313, 318 (S.D.N.Y. 2011), and *Bouchat v. Champion Prods., Inc.*, 327 F. Supp. 2d 537, 553 (D. Md. 2003)), *with Friedman*, 833 F.3d at 1191 (chastising the district court for relying on *Arista Records* and *Bouchat* because the reasoning of those cases is contrary to *Columbia Pictures*).

The majority cannot escape the fact that the relationship between the parties here is precisely the same as it was in *Columbia Pictures*. The downstream defendants here each directly infringed the copyright by violating various of Desire's exclusive rights in its copyrighted work, as the stations did in *Columbia Pictures*. Manna, in the majority's view, is jointly and severally liable for those infringements,[6] just as the *Columbia Pictures* defendant was jointly and severally liable for the stations' infringements. *Id.* And the downstream defendants here, like the stations in *Columbia Pictures*, are not jointly and severally liable with each other. On these facts, multiple statutory damages awards are available. *Friedman*, 833 F.3d at 1190; *Columbia Pictures*, 106 F.3d at 294 & n.7.

The only thing differentiating this case from *Columbia Pictures* is that Manna also committed its *own* intentional

---

[6] It bears repeating that there has never actually been a finding of joint and several liability in this case.

direct infringement, for which it alone is solely liable.  But Manna's additional separate infringement provides no justification for reducing the number of potential statutory damages awards.

## III.    The Plain Language of § 504(c)(1) Allows Multiple Awards of Statutory Damages When Separate Infringements Are Found.

Even if it were not bound by our controlling precedent in *Columbia Pictures* and *Friedman*, the majority's holding is contrary to the text of § 504(c)(1).  We read the language of the statute "in [its] context and with a view to [its] place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)); *see Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003) (en banc).

Section 504(c)(1) provides "an award of statutory damages for all infringements" of a single work "for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally."  At issue here is the meaning of "for which *any* two or more infringers are liable jointly and severally."  (emphasis added).

"Any," is an adjective used to denote choice from multiple people or things.  *See Any*, Webster's New Int'l Dictionary (3d ed. 2002) (defining "any" as "one indifferently out of more than two; one or more: not none— used as a function word to indicate a positive but undetermined number or amount").  Courts have interpreted "any" in a manner consistent with this dictionary definition. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind."  (internal

quotation marks omitted)); *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219–20 (2008).

In § 504(c)(1), the word "any" modifies the phrase "two or more infringers are liable jointly and severally." Read most naturally, "any two or more infringers are liable jointly and severally" means an undetermined number of the infringers who have been held jointly and severally liable. Thus, "any" signals that a court must identify the jointly and severally liable infringers of the work amongst all of the defendants in the action.

Next, the "any" phrase is preceded by "for which," a prepositional phrase that modifies "all infringements involved in the action, with respect to any one work." The statute therefore requires the court to identify the infringers that are jointly and severally liable *with respect to* the "infringements involved in the action." In other words, it matters *which specific acts of infringement* each defendant is jointly and severally liable for, not just that a defendant is jointly and severally liable for some infringement in the case. Thus, the court must separate the defendants into groups based on the separate infringers and works infringed, with each group containing all of the defendants who are jointly and severally liable for a given set of infringements committed.

After these groups have been determined, the statute provides "an award" of statutory damages against each individually liable infringer or against each distinct group of jointly and severally liable infringers. Put another way, the statute provides an award for each separate infringer, whether that is an individually liable infringer or a group of defendants who are jointly and severally liable for a given set of infringements. Here, that would mean that Desire could recover five statutory damages awards: one for each

group of infringers that is potentially jointly and severally liable for the separate direct infringements committed by the five defendants remaining in the case.**[7]**

This result is consistent with the effect of joint and several liability, a concept that identifies which defendants are responsible for paying the full amount of plaintiff's damages, not the total amount of damages to which the plaintiff is entitled.  *See* Restatement (Third) of Torts: Apportionment Liab. § 10 ("When . . . some persons are jointly and severally liable to an injured person, the injured person may sue for and recover the full amount of recoverable damages from any jointly and severally liable person."); *id.* § 10 cmt. b ("[T]he risk that one or more of the parties liable to the plaintiff is insolvent is placed on the other jointly and severally liable defendant(s), rather than on the plaintiff.").

It is also consistent with the structure of the statute, which indisputably permits a separate statutory damages award for each separate infringer.  *See Friedman*, 833 F.3d at 1190.  Thus, even the majority agrees that Desire could have recovered five statutory damages awards had it simply brought five separate lawsuits against the five remaining defendants.  Majority Op. at 35–37.

---

**[7]** The majority's holding rests in large part on a counterfactual argument: to permit a plaintiff to recover a separate statutory damages award against each distinct group of jointly and severally liable defendants would render superfluous the word "any" in § 504(c)(1). Majority Op. at 23.  But interpreting § 504(c)(1) to permit multiple statutory damages awards in this case does not render the word "any" superfluous.  As explained, the word "any" makes clear that courts must determine which defendants are jointly and severally liable for each separate act of infringement.

Rather than adopting this straightforward construction, the majority interprets § 504(c)(1) to create a trap for the unwary. By joining the five remaining defendants in a single case, the majority holds, Desire unwittingly reduced the number of statutory damages awards it could recover from five to one. Specifically, the majority reads § 504(c)(1) to provide that whenever one defendant is jointly and severally liable with its downstream defendants for all downstream infringements, irrespective of whether those downstream defendants are jointly and severally liable with each other, the plaintiff can recover only one statutory damages award. Majority Op. at 22–25. Here, that means that because Manna is jointly and severally liable with each of the other defendants (in the majority's view), none of which is jointly and severally liable with any other party, Desire can obtain only one statutory damages award against all defendants, jointly and severally.

The majority's holding will have broad implications for copyright litigation in the Ninth Circuit. After today, no plaintiff will make the same "mistake" as Desire. It will instead become commonplace for plaintiffs to bring a separate lawsuit against each defendant, maximizing the number of statutory damages awards available while peppering the courts with individual cases that would be more efficiently tried together. Or perhaps plaintiffs will simply avoid suing the defendant at the top of the distribution chain—often the most culpable party—so they can join claims against several downstream infringers in a single action and receive separate awards. This is certainly not how copyright litigation—or really, litigation in general—is supposed to work. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the [Federal] Rules [of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent

with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

Recognizing this absurdity, the majority argues that the risk of separate suits is "outweighed by the vastly disproportionate damages that would flow from a contrary interpretation of Section 504(c)(1)." Majority Op. at 35–37. But again, we have already rejected the idea that there is a "mass-marketing exception" to the rule of separate statutory damages awards. *Friedman*, 833 F.3d at 1191. The majority is not free to resurrect a horrible that we have already laid to rest, particularly as a justification for introducing a nonsensical rule into the law of our circuit.[8]

The majority also points to several supposed practical limitations that it speculates will make it difficult for plaintiffs to bring separate suits. Majority Op. at 35–37. It offers no guarantee, however, and its reasoning is suspect.

---

[8] The majority cites various district court decisions that declined to interpret § 504(c)(1) to permit multiple statutory damages awards in circumstances similar to those presented here because of the potential for astronomical damage awards. Majority Op. at 33–34. However, these courts were not bound by our ruling in *Friedman* that the number of downstream infringers does not affect our interpretation of the statute. 833 F.3d at 1191. They were also not bound by *Friedman*'s requirement that an alleged infringer be joined and proven liable for infringement in an action to support a separate statutory damages award. *Id.* at 1191–92; *see Agence France Presse*, 934 F. Supp. 2d at 550 (the plaintiff sued the distributor of the infringing photographs and none of the distributees); *McClatchey v. Associated Press*, No. 305-CV-145, 2007 WL 1630261, at *2 (W.D. Pa. June 4, 2007) (same); *Arista Records*, 784 F. Supp. 2d at 315 (the plaintiff sued the operators of the system used to infringe and none of the individuals who used the software to infringe). Thus, in those jurisdictions, unlike ours, a plaintiff could easily multiply the number of statutory damages awards available by alleging downstream infringements without the obstacle of joining and proving liability against the alleged downstream infringers.

For example, the majority posits that under Federal Rule of Civil Procedure 42(a), a district court could consolidate separate actions into a single suit, which would have the effect of limiting the plaintiff to one statutory damages award. But using Rule 42(a) to reduce the number of statutory damages awards available would seem to run afoul of the Rules Enabling Act's command that the Federal Rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). In any event, it would be foolish to think that copyright plaintiffs will not at least *try* to bring separate suits, leaving our circuit's already overburdened district court judges to figure out whether there is a way to work around the majority's mess.

Finally, the majority expresses concern that permitting a plaintiff to recover multiple statutory damages awards in these circumstances would make a defendant like Manna liable for many times its actual profits. Majority Op. at 34. But "[e]ven for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy." *F. W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952); *see also New Form, Inc. v. Tekila Films, Inc.*, 357 F. App'x 10, 12 (9th Cir. 2009) (rejecting the "incorrect premise that statutory damages must be tethered to actual damages"). Because a plaintiff need not prove any actual damages to obtain a statutory damages award, and may recover statutory damages even for unprofitable infringement, it is well settled that the defendant's actual profits do not control a plaintiff's ability to recover statutory damages under § 504(c)(1).[9] The

---

[9] To the extent the majority is concerned that "an infringer [w]ould face greater liability for participating in an infringement activity in a *less* culpable manner," Majority Op. at 33, the Copyright Act already

majority has substituted its own policy preferences for those of Congress.

*   *   *

The district court did not issue a judgment or any other order concluding that any defendant was jointly and severally liable for the infringing acts of any other, so it's unclear what the majority thinks it's reversing on its novel theory that where one infringer is jointly and severally liable with every other defendant, but the remaining defendants are not with each other, only one award of statutory damages is available under § 504(c)(1).  Moreover, the majority's opinion conflicts with our court's binding precedent rejecting the very theory it adopts and is itself an atextual reading of the statute.  I therefore respectfully dissent on the question of statutory damages.

---

accounts for differing levels of culpability by distinguishing willful from innocent infringers and limiting the amount of statutory damages that can be imposed against innocent infringers, *see* 17 U.S.C. § 504(c)(1), (c)(2).